**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

FRANCINE McCUMBER
2710 Lorraine Drive
Leesburg, FL 34748

ERIN BIRD
7001 Alcott Street
Westminster, CO 80030

MELISSA LYNCH
352 SW 193rd Avenue
Pembroke Pines, FL 33029

LA SHAY HARVEY
129 Allenwood Road SW
Milledgeville, GA 31061

MARYAH MARCINIAK
10714 South Kedziq Avenue
Chicago, IL 60655

BRIAN MAJKA
4909 Wheat Drive SW
Concord, NC 28027

CHAD WHETMAN
112 Elegante Way
Henderson, NV 89074

TRACY WHITE
2107 Lothric Way, #3214
Murfreesboro, TN 37129

RACHEL OSBORN
12327 Longfellow Drive
Montgomery, TX 77356

TERESA KERR (f/k/a TERESA MARIE
MOORE), an individual, *on behalf of
themselves and on behalf of others
similarly situated,*
12429 54th Drive NE
Marysville, WA 98271

       Plaintiffs,

Case No.

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT

vs.

INVITATION HOMES, INC., a Maryland
corporation,
7 St. Paul Street
Suite 820
Baltimore, MD 21202

SERVE ON:

CSC-LAWYERS INCORPORATING
  SERVICE COMPANY
7 St. Paul Street
Suite 820
Baltimore, MD 21202

                    Defendant.

## CLASS ACTION COMPLAINT

1.      Twelve years ago, the market crashed and 9 million families lost their homes through foreclosure, short-sale, or surrender to a lender. Since then, national and global private equity firms have snatched up tens of thousands of single-family homes at hugely discounted prices (sometimes subsidized by the government and taxpayers), which they have then turned into rental properties.   In short, the residential rental industry has recently undergone a massive transformation and consolidation out of the hands of small and family landlord businesses (who had direct ties to and relationships with their tenants), and into the large arms of private equity, hedge fund, and other Wall Street giants whose allegiances run solely to their investors, and whose motivations are driven purely by stock price and by showing and growing those all-important quarterly earnings.[1]

2.      These changes have hurt consumers.  The Wall Street landlords evict tenants at an astonishingly higher rate than other single-family landlords. For instance, in the Atlanta area, where Defendant Invitation Homes also operates, nearly one-third of all Invitation Homes (f.k.a. Starwood Waypoint) tenants received eviction notices in 2015.  Rent increases follow the same

---

[1] Abood, M. (2018) *Wall Street Landlords Turn American Dream into American Nightmare.*
https://d3n8a8pro7vhmx.cloudfront.net/acceinstitute/pages/100/
attachments/original/1516388955/WallstreetLandlordsFinalReport.pdf?1516388955 (last accessed Aug. 17, 2018).

trend, with Wall Street tenants facing, sometimes, $1,000/month increases.[2]   The Wall Street landlords often systematically refuse to do necessary and even routine maintenance on homes because those costs eat into their crucial bottom line.   The focus in this case is the Wall Street landlords' resort to illegal fee-gouging, such as deploying grossly inflated "late" rent penalties, and penalties that stack on top of penalties that, themselves, cause a tenant to fall behind (even when they are paying their actual rent).   Tenants are forced to pay illegal fees because if they do not, the landlords, like Defendant here, will evict them.

3.      Defendant Invitation Homes Inc. (NYSE: INVH) is the largest player in this newly transformed rental market. Publicly-traded Invitation Homes now owns, leases, and manages more than 82,000 rental homes across the country. Defendant Invitation Homes Inc. and its predecessor entities (collectively "Defendant") created uniform late rent penalty policies across all their residential properties in a state at any one time. These policies are enforced if Defendant received the rent as little as one hour late (past the grace period) and even though Defendant incurs no actual damage as a result.

4.      Moreover, Defendant's policy and practice is to stack penalties where possible, e.g. to charge tenants additional late fees if tenants carry *any* accrued balance of unpaid late fees or other charges, even when the tenants timely pay the monthly rent itself, and regardless of whether the outstanding balance is minimal.   One late rent payment can and often does lead to multiple added fees.

5.      Defendant's late fees constitute illegal penalties under the laws of every state that Defendant operates in. The penalty is illegal, and thus, void, because it is excessive, and bears no relation to any actual damages incurred by Defendant when rent or other fees are paid late.   *See* Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981); U.C.C. ("UCC") § 2-718(1) (followed in principle by every state that Defendant operates in).   Defendant's policies and practices of charging excessive penalties violates the Restatement, and the anti-contractual-

---

[2] Single family rental homes are often exempted from local rent control ordinances which makes their tenants particularly susceptible to price gouging.

penalty and consumer protection provisions of every state in which Defendant operates in, as discussed below.  Plaintiffs, Defendant's tenants who rented homes in Arizona, Colorado, Florida, Georgia, Illinois, Nevada, North Carolina, Tennessee, Texas, and Washington, bring this action to challenge Defendant's excessive penalty policies on behalf of themselves and all other similarly situated tenants in their respective states.

## I. JURISDICTION AND VENUE

6.      There is subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  This Court has jurisdiction under CAFA because there are more than one hundred putative Class members, the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than one or more Defendants.

7.      This Court has personal jurisdiction over Defendant as to all Plaintiffs' claims because Defendant is incorporated in the State of Maryland.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district pursuant to 28 U.S.C. § 1931(c)(2).

## II. THE PARTIES

9.      Plaintiff Francine McCumber was a tenant of Defendant Invitation Homes in Arizona subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

10.     Plaintiff Erin Bird was a tenant of Defendant Invitation Homes in Colorado subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

11.     Plaintiff Melissa Lynch was a tenant of Defendant Invitation Homes in Florida subject to Defendant's illegal late rent penalty policy and he was forced to pay, and did pay, late rent penalties to Defendant.

12.     Plaintiff La Shay Harvey was a tenant of Defendant Invitation Homes in Georgia subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late

rent penalties to Defendant.

13.    Plaintiff Maryah Marciniak was a tenant of Defendant Invitation Homes in Illinois subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

14.    Plaintiff Brian Majka was a tenant of Defendant Invitation Homes in North Carolina subject to Defendant's illegal late rent penalty policy and he was forced to pay, and did pay, late rent penalties to Defendant.

15.    Plaintiff Chad Whetman was a tenant of Defendant Invitation Homes in Nevada subject to Defendant's illegal late rent penalty policy and he was forced to pay, and did pay, late rent penalties to Defendant.

16.    Plaintiff Tracy White was a tenant of Defendant Invitation Homes in Tennessee subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

17.    Plaintiff Rachel Osborn was a tenant of Defendant Invitation Homes in Texas subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

18.    Plaintiff Teresa Kerr (formerly known as Teresa Marie Moore) was a tenant of Defendant Invitation Homes in Washington subject to Defendant's illegal late rent penalty policy and she was forced to pay, and did pay, late rent penalties to Defendant.

19.    Invitation Homes was once privately held by New York's Blackstone Group. Blackstone took Invitation Homes public in February 2017. By that time, another large home rental firm—Waypoint Homes—had already merged with another—Colony Starwood—in 2016. Invitation Homes then merged with the new Starwood Waypoint Homes entity in November 2017 to create the current defendant: Invitation Homes, Inc. Defendant's predecessor entities' eventual merger into Defendant occurred over several years, making Defendant one of the largest owners of rental homes in America.

20.    Starwood Waypoint Residential Trust ("SWAY") was a former Maryland real

estate investment trust that owned and rented homes in California. Colony America Homes, Inc. ("CAH") was another former Maryland real estate investment trust that owned and rented homes.

21.     On November 13, 2015, SWAY sought approval of its shareholders to merge with CAH, with the resulting entity being named "Colony Starwood Homes" and intending to "be one of the world's largest owners and operators of [single-family residential] property." The new "Colony Starwood Homes" entity would be jointly chaired by the then-present Chairman and CEO of Starwood, Barry Sternlicht, and the then-present executive chairman of Colony, Thomas J. Barrack, Jr. The merger was completed on January 5, 2016.

22.     On July 28, 2017, Colony Starwood Homes amended its declaration of trust and bylaws to change its name from "Colony Starwood Homes" to "Starwood Waypoint Homes."

23.     On October 16, 2017, Invitation Homes and Starwood Waypoint issued a joint proxy statement to their respective shareholders about a proposed merger of the two entities. On November 16, 2017, the merger between the two entities was completed.

24.     Today, Defendant owns, controls, leases, and manages over 80,000 homes across 12 U.S. States: California, Georgia, North Carolina, Illinois, Texas, Colorado, Florida, Nevada, Minnesota, Tennessee, Arizona, and Washington. Defendant's policy and practice, throughout the nation, is to assess residential tenants late fees immediately after the applicable grace period. Defendant's systematic practice is to also threaten eviction—i.e., serve a notice to "pay rent or quit," as soon as the rent is late, and along with or very soon after charging the late fee.  When it does so, Defendant then often tacks on a "legal" fee which can be $75 or more. If tenants do not pay these automatic fees, they will be evicted promptly.

25.     These late fees are exorbitant when you do the math. For example, a typical rent in Colorado could be $2,699 per month. If the tenant paid his or her rent just two days late, Defendant could charge the tenant a minimum $95 penalty. That amounts to a 642% annual interest rate on that $2,699 original balance.

26.     Ms. McCumber has lived in her rental home for several years. Ms. McCumber began renting her home in Phoenix, Arizona from Defendant on or about July 2017, and her lease

with Defendants expired on or about July 2020. Ms. McCumber has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes Arizona. Ms. McCumber has been charged and paid thousands of dollars in late fees while renting from Defendant. While Ms. McCumber's rent has gone up over the years, Defendant's "late fee" has remained $95 for much of this time, demonstrating that the late fee Defendant charged Ms. McCumber had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

27.     Ms. McCumber's story is, unfortunately, common. The other named Plaintiffs were similarly subject to Defendant's exorbitant late fee policies and practices.

28.     Ms. Bird has also lived in her rental home for several years. Ms. Bird began renting her home in Arvada, Colorado from Defendant on or about May 2015, and she stopped renting from Defendant on or about May 2019. Ms. Bird has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Colorado. Ms. Bird was charged and paid exorbitant late fees by Defendant that had little to no relation to the actual damages, if any, faced by Defendant when Ms. Bird tenant pays rent late.

29.     Ms. Lynch has also lived in rental homes owned by Defendant for several years.. Ms. Lynch signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Florida. Ms. Lynch was charged and paid thousands in exorbitant late fees by Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

30.     Ms. Harvey has lived in her rental home for almost two years. Ms. Harvey began renting her home in Covington, Georgia from Defendant on or about September 2017. Ms. Harvey has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Georgia. Ms. Harvey was and is subject to Defendant's illegal late rent penalty policy and she was charged and paid exorbitant late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

CLASS ACTION COMPLAINT

31.     Ms. Marciniak has also lived in her rental home for several years. Ms. Marciniak begin renting her home in Chicago, Illinois from Defendant on or about February 2017, and her lease with Defendant expired on or about May 2020. Ms. Marciniak has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Illinois. Ms. Marciniak was and is subject to Defendant's illegal late rent penalty policy and she was charged and paid exorbitant late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

32.     Mr. Majka has also lived in his rental home for several years. Mr. Majka began renting his home in Concord, North Carolina from Defendant on or about July 2017. Ms. Majka has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in North Carolina. Mr. Majka was and is subject to Defendant's illegal late rent penalty policy and he was charged and paid hundreds of dollars in late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

33.     Mr. Whetman has also lived in his rental home for several years. Mr. Whetman began renting his home in Henderson, Nevada from Defendant on or about July 2017. Mr. Whetman has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Nevada. Mr. Whetman was and is subject to Defendant's illegal late rent penalty policy and he was charged and paid exorbitant late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

34.     Ms. White has also lived in her rental home for several years. Ms. White begin renting her home in Murfreesboro, Tennessee on or about February 2017. Ms. White has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in North Carolina.  Ms. White was and is subject to Defendant's illegal late rent penalty policy and she was charged and paid thousands in late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

35.     Ms. Osborn has also lived in her rental home for several years. Ms. Osborn begin renting her home in Montgomery, Texas on or about December 2014. Ms. Osborn has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Texas. Ms. Osborn was and is subject to Defendant's illegal late rent penalty policy and she was charged and paid exorbitant late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

36.     Ms. Kerr has also lived in her rental home for several years. Ms. Osborn begin renting her home in Marysville, Washington on or about December 2017. Ms. Kerr has signed and been subject to Defendant's uniform late fee policies that Defendant uses for all of its homes in Washington. Ms. Kerr was and is subject to Defendant's illegal late rent penalty policy and she was charged and paid thousands in late rent penalties to Defendant that had little to no relation to the actual damages, if any, faced by Defendant from any alleged late payment of rent.

37.     Defendant knows it has virtually unchecked power to collect whatever late fee it wants, *when* it wants, no matter how illegal it may be.  This is because the system that Defendant deployed is protected by the threat of eviction.  Defendant knows that the tenant faces the following dilemma: pay the late fees and stacked penalties, or challenge them but swiftly see a "3-Day Notice to Pay Rent or Quit" posted on your front door and risk eviction for yourself and your family.  When faced with that choice, tenants begrudgingly pay the penalty, and Defendant knows this.

38.     Defendant's late penalty—both the "fee" by itself, and also when combined with stacked fees and/or added "legal" fees—is an arbitrary amount which functions as an illegal penalty.  All 12 of the states in which Defendant owns homes and does business, including the 10 states represented by Plaintiffs, outlaw such penalties.  In all of the relevant states, while landlords may institute appropriate "liquidated damages" provisions under certain circumstances, they generally may only do so if: (a) it would be extremely difficult or infeasible to calculate actual damages from the late payment; *and* (b) they undertake a sufficient endeavor to set a reasonable amount in light of the actual harm. *See, e.g.,* Restatement (Second) of Contracts § 356(1) (Am.

Law Inst. 1981); U.C.C. § 2-718(1).

39.     Defendant's late penalty utterly fails on both points.  First, it is not difficult or infeasible to calculate damages from late rent.  In the vast majority of cases, rent is only a few days (perhaps only hours) late, causing no actual damage to Defendant. In its 2018 Annual SEC 10-K Report, Defendant admitted that since 2017 it's imposition of late fees has been "automat[ed] and consistent,"[3] suggesting no human intervention is required resulting in no opportunity cost. Loss of use of having rent money sitting in a bank account by a certain hour or day, furthermore, can be compensated by a marginal interest payment that is definite and easily ascertainable, as courts have long held. Moreover, in more advanced cases when Defendant seeks to collect late rent payments by actually filing an unlawful detainer action, they charge attorney's fees and costs separately to those tenants, demonstrating that Defendant views those legal costs as separate from the damages that allegedly flow automatically from rent being paid late (even assuming that such costs could lawfully be recouped via late fees).  Second, on information and belief, Defendant has never made a reasonable endeavor to estimate a fair average or actual compensation for the losses sustained when a tenant pays rent late, as required when setting a lawful "liquidated damage."

40.     The excerpt below from Defendant's 2018 SEC 10-K Annual Report demonstrates that Defendant's policies and practices affect thousands of individuals nationwide, including approximately: 7,200 in Arizona, 2,100 in Colorado, 24,000 in Florida, 11,500 in Georgia, 3,200 in Illinois, thousands in North Carolina, 2,600 in Nevada, over 700 in Tennessee, 4,200 in Texas, and 3,200 in Washington.[4]

**Our Portfolio**

The following table provides summary information regarding our total and Same Store portfolios as of and for the year ended December 31, 2018 as noted below:

| Market | Number of Homes[1] | Average Occupancy[2] | Average Monthly Rent[3] | Average Monthly Rent PSF[3] | % of Revenue[4] |
|---|---|---|---|---|---|
| Western United States: | | | | | |
| Southern California | 8,293 | 95.5% | $2,277 | $1.35 | 13.2% |
| Northern California | 4,529 | 96.0% | 1,954 | 1.27 | 6.5% |
| Seattle | 3,402 | 94.1% | 2,082 | 1.09 | 5.1% |
| Las Vegas | 4,486 | 95.6% | 1,521 | 0.86 | 5.4% |
| Denver | 7,975 | 95.3% | 1,793 | 1.12 | 7.5% |
| Western United States Subtotal | 28,685 | 95.4% | 1,838 | 1.08 | 37.7% |
| Florida: | | | | | |
| South Florida | 8,984 | 94.1% | 2,116 | 1.15 | 13.4% |
| Tampa | 8,359 | 94.4% | 1,605 | 0.87 | 9.7% |
| Orlando | 5,919 | 95.4% | 1,568 | 0.85 | 6.5% |
| Jacksonville | 1,910 | 95.0% | 1,617 | 0.81 | 2.2% |
| Florida Subtotal | 25,172 | 94.6% | 1,780 | 0.96 | 31.8% |

[3] See https://www.sec.gov/Archives/edgar/data/1687229/000168722919000014/0001687229-19-000014-index.htm (Invitation Homes 2018 10-K report, p. 58, filed Feb. 28, 2019).

[4] *Id.*

41.     Particularly nefarious and punitive is Defendant's practice of stacking or "pyramiding" penalties upon penalties. Defendant imposes the late fee penalty. Defendant then systematically imposes a "legal" fee. Then, separately and month after month, Defendant stacks another fee on top even when a tenant is carrying a minimal balance, and even if the tenant has paid the base rent for that month (but, perhaps, not paid the full amount of all of the additional penalties that Defendant unilaterally imposed). This policy—which essentially establishes multiple late charges based on a single original late payment—is set forth in Defendant's standard lease, which Plaintiff and others had to execute on a take-it-or-leave it basis.

42.     More specifically, Defendant and its uniform required lease define the late rent penalty itself as "rent," and Defendant records these fees as a debt on tenants' rent ledger or account. On information and belief, upon receiving tenants' subsequent monthly rent payments,

Defendant applies that payment to the previously recorded debt first (including the assessed penalties), rather than the rent due for the month in which payment is actually made. Defendant then considers that month's "rent" as not paid in full and then assesses *another* late rent penalty despite tenants' full and timely monthly rent payment. As a result, Defendant charges a late fee such as $95 on a balance that may be only $95 to begin with, or even smaller. As a result, tenants incur repeated late penalties. This happened to many members of the Classes.

43.     The practice of charging late fees on outstanding late fees and other balance amounts other than the monthly rent itself is an also an unfair and illegal business practice no different than the "pyramiding" of late fees by banks that was found to be unlawful.

44.     During a recent earnings call with banks and investors, furthermore, Invitation Homes spoke proudly of such efforts, boasting of a 22% increase in earnings due to its "system" which is designed to "track resident delinquency on a daily basis" in order to continually, and automatically, assess late fees and process evictions without regard to individual circumstances. These impressive earnings, in short, are ultimately the result of Defendant systematically imposing and collecting what is, as a matter of law, an illegal penalty.

## IV.     CLASS ALLEGATIONS

45.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

46.     **CLASS PERIOD.** The Class Periods shall be defined from the date of the filing of this complaint, back to any such time the court deems appropriate.

47.     **CLASS DEFINITION.** There are ten classes or sub-classes, defined as follows:

a.     **ARIZONA CLASS**

*All of Defendant's Arizona tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

b.     **COLORADO CLASS**

*All of Defendant's Colorado tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    c.    **FLORIDA CLASS**

*All of Defendant's Florida tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    d.    **GEORGIA CLASS**

*All of Defendant's Georgia tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    e.    **ILLINOIS CLASS**

*All of Defendant's Illinois tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    f.    **NEVADA CLASS**

*All of Defendant's Nevada tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    g.    **NORTH CAROLINA CLASS**

*All of Defendant's North Carolina tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    h.    **TENNESSEE CLASS**

*All of Defendant's Tennessee tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    i.    **TEXAS CLASS**

*All of Defendant's Texas tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

    j.    **WASHINGTON CLASS**

*All of Defendant's Washington tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient.*

48.    The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

49.    Plaintiffs reserve the right to amend the above class definitions and to add

additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

50.     **NUMEROSITY:** The potential members of each these Classes as defined are so numerous that joinder of all the members is impracticable. While the precise number of Class members has not been determined, it is currently believed to number into the thousands.  Plaintiffs are informed and believe that Defendant has access to data sufficient to identify all Class members and all relevant charges.

51.     Plaintiffs are informed, believe, and on that basis allege that Defendant's records would provide information as to the number and location of all Class members.

52.     **ADEQUACY OF REPRESENTATION:** The named Plaintiffs are fully prepared to take all necessary steps to fairly and adequately represent the interests of the classes defined above. Plaintiffs' attorneys are ready, willing, and able to fully and adequately represent the class and individual Plaintiffs. Plaintiffs' attorneys are highly experienced in consumer class action litigation. Plaintiffs intend to prosecute this action vigorously.

53.     **COMMON QUESTIONS OF LAW AND FACT:** Common questions of law and fact concerning these claims predominate over any individual questions.  Those common questions include:

      a.     What Defendant's leases say;

      b.     What Defendant's late fee penalties are;

      c.     Whether any damages actually felt by Defendant as a result of late rent are truly impracticable or extremely difficult to calculate;

      d.     How Defendant set its late fees and whether it actually tried to calculate whether it would represent fair compensation for the loss sustained;

      e.     Whether Defendant's conduct violates law or public policy in Arizona, Colorado, Florida, Georgia, Illinois, North Carolina, Nevada, Tennessee, Texas, or Washington;

      f.     Whether Plaintiffs and the Classes may recover monetary damages;

g.      Whether Plaintiffs and the Classes may obtain an order of restitution;

h.      Whether Plaintiffs and the Classes may obtain declaratory relief; and

i.      Whether Plaintiffs and the Classes may obtain injunctive relief.

54.    TYPICALITY: The claims of the Plaintiffs are typical of the claims of all members of the Classes because Defendant imposed the same or similar policies for tenants in particular state.

55.    SUPERIORITY OF A CLASS ACTION: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Classes predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiffs are unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a class action.

## III. <u>FIRST CAUSE OF ACTION</u>

**(Imposition of an Illegal Penalty – Ariz. Rev. Stat. § 47-2718)**
**(By Plaintiff McCumber on behalf of herself and the**
**Arizona Class, Against Defendant)**

56.    Plaintiff McCumber incorporates by reference each and every allegation contained above.

57.    Defendant rented real property to Plaintiff McCumber and Arizona Class members for use as dwellings by Plaintiff McCumber, Arizona Class members, or those dependent upon Plaintiff McCumber or Arizona Class members for support.

58.    Arizona Revised Statute section 47-2718 provides that "damages for breach by either party [to a contract] may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

59.     During the Class Period, on information and belief, any actual damages Defendant sustained as a result of Plaintiff McCumber and Arizona Class members' late payment of rent or other outstanding balance amounts are neither reasonable in the light of the anticipated or actual harm caused by late payment of rent, nor is the proof of loss extremely difficult to fix.  Nor is Defendant's late rent fee the result of a reasonable effort to estimate fair compensation for Defendant's actual damages sustained, if any, due to their late receipt of rent or other outstanding balance amounts from Plaintiff McCumber or Arizona Class members.

60.     Defendant's late rent penalties are accordingly unlawful pursuant to Arizona Revised Statute section 47-2718. Plaintiff McCumber and Arizona Class members are entitled to restitution of all fees Defendant has collected from tenants for the late payment of rent or other outstanding balances, as well as interest and other relief as specifically prayed for here.

## IV. <u>SECOND CAUSE OF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Arizona Law)**
**(By Plaintiff McCumber on behalf of herself and the**
**Arizona Class, Against Defendant)**

61.     Plaintiff McCumber incorporates by reference each and every allegation contained above.

62.     Plaintiff McCumber brings their claim individually and on behalf of the members of the Arizona class.

63.     Under Arizona law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. As described above, Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Arizona tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that Defendant's late fee is not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

64.     Plaintiff McCumber and her fellow Arizona Class members conferred benefits on

Defendant by paying late rent penalties that were improperly charged.

65.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff McCumber and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff McCumber and the Arizona class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff McCumber and members of the Arizona class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

66.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff McCumber and her fellow Arizona Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff McCumber and the Arizona class for Defendant's unjust enrichment, as ordered by the Court.

## V. THIRD CAUSE OF ACTION

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff McCumber on behalf of herself and the**
**Arizona Class, Against Defendant)**

67.     Plaintiff McCumber incorporates by reference each and every allegation contained above.

68.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Arizona law.

69.     An actual, present, and justiciable controversy exists between Plaintiff McCumber and the Arizona Class members and Defendant concerning their respective rights and duties. Plaintiff McCumber alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

70.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Arizona law that must be voided and all fees collected returned.

71.     The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Arizona renters consistent with Arizona law. If an injunction is not issued, Plaintiff McCumber and the Arizona Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff McCumber and the Arizona Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

72.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Defendant from illegally collections thousands in late fees from the large number of Arizona citizens who rent homes from Defendant.

## VI. <u>FOURTH CAUSE OF ACTION</u>

### (Unjust Enrichment/Quasi-Contract Under Colorado Law)
### (By Plaintiff Bird on behalf of herself and the
### Colorado Class, Against Defendant)

73.     Plaintiff Bird incorporates by reference each and every allegation contained above.

74.     Plaintiff Bird brings her claim individually and on behalf of the members of the Colorado Class.

75.     Under Colorado law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. As described above, Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Colorado tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late

payment of rent and is therefore an illegal penalty.

76.     Plaintiff Bird and her fellow Colorado Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

77.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Bird and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Bird and the Colorado class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Bird and members of the Colorado class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

78.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Bird and her fellow Colorado Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Bird and the Colorado class for Defendant's unjust enrichment, as ordered by the Court.

## VII. <u>FIFTH CAUSE OF ACTION</u>

**(Violation of Florida Deceptive and Unfair Trade Practices Act –
Fla. Stat. § 501.201 et seq.)
(By Plaintiff Lynch on behalf of herself and the
Florida Class, Against Defendant)**

79.     Plaintiff Lynch incorporates by reference each and every allegation contained above.

80.     The Florida Deceptive and Unfair Trade Practices Act (Florida Statute section 501.201, *et seq.*) ("FDUTPA") prohibits and makes unlawful unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive actions or practices in the conduct of any trade or commerce. See Fla. Stat. § 501.204. Here, Defendants alleged actions were in the conduct of trade or commerce under the FDUTPA.

81.    A practice is unfair under the FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

82.    Defendant's policy and practice with respect to imposing excessive late fees is unfair under the FDUTPA because it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including having a great and deleterious effect on its victims (including Plaintiff Lynch, the Florida Class, and competitors) and it has no legal justification. Specifically, at least 20,000 individuals rent homes from Defendant in Florida, and are subject to Defendant's illegal late fee policies. These late fees have caused Florida residents to pay thousands if not millions of dollars in illegal late fees.

83.    As described in more detail above, Defendant's late fee policies solely benefit Defendant, by allowing it to illegally profiteer off those who are either unable to afford a home or lost their home and are forced to rent. Defendant's late fee policies allow it to both avoid the additional costs borne by its lawful competitors (e.g., attempting to ascertain potential damages caused by late payment of rent prior to drafting or signing the lease agreement with a late fee), while charging an amount that is unconscionable in comparison to Defendant's actual loss, if any, harming both renters and lawful competition and violating the law.

84.    Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. Defendant's stacking and/or pyramiding late fees, violates the same public policies embodied in FDUTPA, as well as those policies embodied in the FTC Act, Section 5 (*i.e.*, 15 U.S.C. 45—which prohibits

unfair methods of competition), which the Florida legislature intended to be given due consideration and great weight in interpreting the FDUTPA.[5] *See* Fla. Stat. § 501.204, subd. (2).

85.     Defendant's business practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Indeed, these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also to ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

86.     Plaintiff Lynch and Florida Class members were aggrieved by and have suffered injury in fact and lost money or property as a result of Defendant's violation of the FDUTPA, as they were charged and paid late fees in excess of what is legally permissible.

87.     As a result of these unlawful business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff Lynch and all similarly-situated tenants and former tenants. Plaintiff Lynch and Florida Class members are therefore entitled to an order of damages, attorney's fees, and court costs under Florida Statute § 501.211.

## VIII. <u>SIXTH CAUSE OF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Florida Law)**
**(By Plaintiff Lynch on behalf of herself and the**
**Florida Class, Against Defendant)**

88.     Plaintiff Lynch incorporates by reference each and every allegation contained above.

89.     Plaintiff Lynch brings her claim individually and on behalf of the members of the Florida Class.

90.     Under Florida law, a liquidated damages provision is only lawful if the damages

---

[5] Pyramiding, in the context of lending, is listed expressly as an example of an unfair act or practice within the meaning of the FTC Act.  *See* 12 C.F.R. 535.4.

consequent upon a breach are not readily ascertainable, and the liquidated damages amount must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages. As described above, Defendant's late fee was ascertainable, as the late fee process is automated. Further, Defendant's late fee is grossly disproportionate to any damages that it might expect to follow from a late payment of rent. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that its late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

91.     Plaintiff Lynch and her fellow Florida Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

92.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Lynch and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Lynch and the Florida class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Lynch and members of the Florida class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

93.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Lynch and her fellow Florida Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Lynch and the Florida class for Defendant's unjust enrichment, as ordered by the Court.

### IX. SEVENTH CAUSE OF ACTION

**(Violation of Georgia Uniform Deceptive Practices Act –
Ga. Code § 10-1-370 et seq.)
(By Plaintiff Harvey on behalf of herself and the
Georgia Class, Against Defendant)**

94.     Plaintiff Harvey incorporates by reference each and every allegation contained above.

95.     The Georgia Uniform Deceptive Practices Act (Ga. Code § 10-1-370 *et seq.*) ("GUDPA") provides that unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are unlawful. (Ga. Code § 10-1-393(a).)

96.     Defendant's policy and practice with respect to imposing excessive late fees is unfair under the GUDPA because it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including having a great and deleterious effect on its victims (including Plaintiff Harvey, the Georgia Class, and competitors) and it has no legal justification. Specifically, at least 10,000 individuals rent homes from Defendant in Georgia, and are subject to Defendant's illegal late fee policies. These late fees have caused Georgia residents to pay thousands if not millions of dollars in illegal late fees.

97.     As described more fully above, Defendant's late fee policies solely benefit Defendant, by allowing it to illegally profiteer off those who are either unable to afford a home or lost their home and are forced to rent. Defendant's late fee policies allow it to both avoid the additional costs borne by its lawful competitors (e.g., attempting to ascertain potential damages caused by late payment of rent prior to drafting or signing the lease agreement with a late fee), while charging an amount that is unconscionable in comparison to Defendant's actual loss, if any, harming both renters and lawful competition and violating the law.

98.     Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. Defendant's stacking and/or pyramiding late fees violates the same public policies embodied in GUDPA.

99.     Defendant's unfair business practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also to ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

100.     Plaintiff Harvey and Georgia Class members were aggrieved by and have suffered injury in fact and lost money or property pursuant to the GUDPA, as they were charged and paid late fees in excess of what is legally permissible.

101.     As a result of these unlawful business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff Harvey and all similarly situated tenants and former tenants. Plaintiff Harvey and Georgia Class members are therefore entitled to an order of damages, treble damages, attorney's fees, and court costs under the GUDPA.

## X. <u>EIGHTH CAUSE OF ACTION</u>

**(Imposition of an Illegal Penalty – G.A. Code § 13-6-7.)**
**(By Plaintiff Harvey on behalf of herself and the**
**Georgia Class, Against Defendant)**

102.     Plaintiff Harvey incorporates by reference each and every allegation contained above.

103.     Defendant rented real property to Plaintiff Harvey and Georgia Class members for use as dwellings by Plaintiff Harvey, Georgia Class members, or those dependent upon Plaintiff Harvey or Georgia Class members for support.

104.     Georgia Statute § 13-6-7 allows liquidated damages for a breach of contract "unless the agreement violates some principle of law." (Ga. Stat § 13-6-7.) Under Georgia law, a

liquidated damages clause is legal only if the injury of breach is difficult to estimate, the clause is intended to provide damages instead of a penalty, and the sum must be a reasonable estimate of the probable loss.

105.    During the Class Period, on information and belief, any actual damages Defendant sustained as a result of Plaintiff Harvey and Georgia Class members' late payment of rent or other outstanding balance amounts are neither reasonable in the light of the anticipated or actual harm caused by late payment of rent, nor is the actual injury or loss difficult to fix. Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses.

106.    Defendant's late rent penalties are accordingly unlawful pursuant to Georgia Statute § 13-6-7. Plaintiff Harvey and Georgia Class members are entitled to restitution of all fees Defendant has collected from tenants for the late payment of rent or other outstanding balances, as well as interest and other relief as specifically prayed for here.

## XI. <u>NINTH CAUSE OF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Georgia Law)**
**(By Plaintiff Harvey on behalf of herself and the**
**Georgia Class, Against Defendant)**

107.    Plaintiff Harvey incorporates by reference each and every allegation contained above.

108.    Plaintiff Harvey brings her claim individually and on behalf of the members of Georgia class.

109.    Under Georgia law, a liquidated damages clause is legal only if the injury of breach is difficult to estimate, the clause is intended to provide damages instead of a penalty, and the sum must be a reasonable estimate of the probable loss. As described above, Defendant's late fee

is not a reasonable estimate in light of the anticipated or actual loss faced by Defendant when Georgia tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that Defendant's late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

110.    Plaintiff Harvey and her fellow Georgia Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

111.    During the Class Period, on information and belief, any actual damages Defendant sustained as a result of Plaintiff Harvey and Georgia Class members' late payment of rent or other outstanding balance amounts are neither reasonable in the light of the anticipated or actual harm caused by late payment of rent, nor is the actual injury or loss difficult to fix. Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. As such, Defendant's late fees were unlawful penalties.

112.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Harvey and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Harvey and the Georgia class.   Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.   Defendant's retention of those monies has caused injuries to Plaintiff Harvey and members of the Georgia class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

113.    Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiff Harvey and her fellow Georgia Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Harvey and the Georgia class for Defendant's unjust enrichment, as ordered by the Court.

## XII. <u>TENTH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Harvey on behalf of herself and the Georgia Class, Against Defendant)**

114.     Plaintiff Harvey incorporates by reference each and every allegation contained above.

115.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Georgia law.

116.     An actual, present, and justiciable controversy exists between Plaintiff Harvey and the Georgia Class members and Defendant concerning their respective rights and duties. Plaintiff Harvey alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

117.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Georgia law that must be voided and returned.

118.     The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Georgia renters consistent with Georgia law. If an injunction is not issued, Plaintiff Harvey and the Georgia Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Harvey and the Georgia Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

119.     Issuance of the requested injunction will not disserve the public interest. To the

contrary, such an injunction would benefit the public by preventing Defendant from illegally collections thousands in late fees from the large number of Georgia citizens who rent homes from Defendant.

### XIII. ELEVENTH CAUSE OF ACTION

**(Violations of Illinois Consumer Fraud Act –
815 Ill. Comp. Stat. § 505/1 et seq.)
(By Plaintiff Marciniak on behalf of herself and the
Illinois Class, Against Defendant)**

120.    Plaintiff Marciniak incorporates by reference each and every allegation contained above.

121.    The Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. § 505/1 et seq.) ("ICFA") is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.

122.    Relevantly, Defendant is a "person" as defined by 815 Ill. Comp. State. § 505/1(c). Plaintiff Marciniak and the Illinois Class members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e). Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined in 815 Ill. Comp. Stat. § 505/1(f).

123.    Defendant's policy and practice with respect to imposing excessive late fees is unfair under the ICFA because it offends public policy, it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including having a great and deleterious effect on its victims (including Plaintiff Marciniak, the Illinois Class, and competitors) and it has no legal justification. Specifically, at least 3,000 individuals rent homes from Defendant in Illinois, and are subject to Defendant's illegal late fee policies. These late fees have caused Illinois residents to pay thousands of dollars in illegal late fees.

124.    Defendant's late fee policies solely benefit Defendant, by allowing it to illegally profiteer off those who are either unable to afford a home or lost their home and are forced to rent. Defendant's late fee policies allow it to both avoid the additional costs borne by its lawful

competitors (e.g., attempting to ascertain potential damages caused by late payment of rent prior to drafting or signing the lease agreement with a late fee), while charging an amount that is unconscionable in comparison to Defendant's actual loss, if any, harming both renters and lawful competition, and violating the law.

125.    Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief, the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. Illinois residents had little choice except to accept the rental agreement as-is, and they had no reasonable alternative than to accept the late fee provision. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. Defendant's stacking and/or pyramiding late fees violates the same public policies embodied in IDBPA.

126.    Defendant's unfair business practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also result in ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

127.    Plaintiff Marciniak and Illinois Class members were aggrieved by and have suffered injury in fact and lost money or property that was directly and proximately caused by Defendant's unfair business practices, Defendant clearly intended all renters to accept the late fee as a legal liquidated damages provision rather than an illegal penalty, and the unfair business practices at issue occurred during consumer transaction for the rental of homes.

128.    As a result of Defendant's unfair business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff Marciniak and all similarly situated tenants and former tenants. Plaintiff Marciniak and Illinois Class members therefore seek all

monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorney's fees and costs.

## XIV. <u>TWELFTH CAUSEOF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Illinois Law)**
**(By Plaintiff Marciniak on behalf of herself and the**
**Illinois Class, Against Defendant)**

129.    Plaintiff Marciniak incorporates by reference each and every allegation contained above.

130.    Plaintiff Marciniak brings her claim individually and on behalf of the members of the Illinois Class.

131.    Under Illinois law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. As described above, Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Illinois tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

132.    Plaintiff Marciniak and her fellow Illinois Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

133.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Marciniak and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Marciniak and the Illinois class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Marciniak and members of the Illinois class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

134.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Marciniak and her fellow Illinois Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Marciniak and the Illinois class for Defendant's unjust enrichment, as ordered by the Court.

## XV. <u>THIRTEENTH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Marciniak on behalf of herself and the Illinois Class,**
**Against Defendant)**

135.    Plaintiff Marciniak incorporates by reference each and every allegation contained above.

136.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Illinois law.

137.    An actual, present, and justiciable controversy exists between Plaintiff Marciniak and the Illinois Class members and Defendant concerning their respective rights and duties. Plaintiff Marciniak alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

138.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Illinois law that must be voided and returned.

139.    The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Illinois renters consistent with Illinois law. If an injunction is not issued, Plaintiff Marciniak and the Illinois Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Marciniak and the Illinois Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-

existing legal obligations.

140.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Defendant from illegally collections thousands in late fees from the large number of Illinois citizens who rent homes from Defendant.

## XVI. <u>FOURTEENTH CAUSE OF ACTION</u>

**(Violation of North Carolina Unfair Trade Practices Act –
N.C. Gen. Stat § 75-1.1 Et Seq.)
(By Plaintiff Majka on behalf of himself and the
North Carolina Class, Against Defendant)**

141.    Plaintiff Majka incorporates by reference each and every allegation contained above.

142.    Defendant offered or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined in N.C. Gen. Stat. § 75-1.1(b).

143.    The North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. § 75-1.1 *et seq.*) ("NCUTPA") makes unlawful unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce. Under the NCUTPA, the words unfair methods of competition" encompass "any conduct that a court of equity would consider unfair, including any practice that is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive.

144.    Defendant engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1. Defendant's policy and practice with respect to imposing excessive late fees is unfair under the NCUTPA because it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including having a great and deleterious effect on its victims (including Plaintiff Majka, the North Carolina Class, and competitors) and it has no legal justification. Specifically, over 1,000 individuals rent homes from Defendant in North Carolina, and are subject to Defendant's illegal late fee policies. These late

fees have caused North Carolina residents to pay thousands if not millions of dollars in illegal late fees.

145.    As described in more detail above, Defendant's late fee policies solely benefit Defendant, by allowing it to illegally profiteer off those who are either unable to afford a home or lost their home and are forced to rent. Defendant's late fee policies allow it to both avoid the additional costs borne by its lawful competitors (e.g., attempting to ascertain potential damages caused by late payment of rent prior to drafting or signing the lease agreement with a late fee), while charging an amount that is unconscionable in comparison to Defendant's actual loss, if any, harming both renters and lawful competition and violating the law.

146.    Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. Defendant's stacking and/or pyramiding late fees violates the same public policies embodied in NCUTPA.

147.    Additionally, Defendant's business practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Indeed, these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also result in ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

148.    Plaintiff Majka and North Carolina Class members were aggrieved by and have suffered injury in fact and lost money or property as a result of Defendant's violation of the NCUTPA, as they were charged and paid late fees in excess of what is legally permissible.

149.    Defendant's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses under N.C. Gen. Stat. § 75-8.

150.    Plaintiff Majka and the North Carolina Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorney's fees and costs.

## XVII. **FIFTEENTH CAUSE OF ACTION**

**(Unjust Enrichment/Quasi-Contract Under North Carolina Law)**
**(By Plaintiff Majka on behalf of himself and the**
**North Carolina Class, Against Defendant)**

151.    Plaintiff Majka incorporates by reference each and every allegation contained above.

152.    Plaintiff Majka brings his claim individually and on behalf of the members of the North Carolina Class.

153.    Under North Carolina law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. As described above, Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when North Carolina tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

154.    Plaintiff Majka and his fellow North Carolina Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

155.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Majka and his fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Majka and the North Carolina class.  Retention of those monies under these circumstances is unjust and

inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Majka and members of the North Carolina class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

156.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Majka and his fellow North Carolina Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Majka and the North Carolina class for Defendant's unjust enrichment, as ordered by the Court.

### XVIII. <u>SIXTEENTH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Majka on behalf of himself and the North Carolina Class, Against Defendant)**

157.    Plaintiff Majka incorporates by reference each and every allegation contained above.

158.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate North Carolina law.

159.    An actual, present, and justiciable controversy exists between Plaintiff Majka and the North Carolina Class members and Defendant concerning their respective rights and duties. Plaintiff Majka alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

160.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under North Carolina law that must be voided and returned.

161.    The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from North Carolina renters consistent with North Carolina law. If an injunction is not issued, Plaintiff Majka and the North Carolina Class will

suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Majka and the North Carolina Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

162.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Defendant from illegally collections thousands in late fees from the large number of North Carolina citizens who rent homes from Defendant.

## XIX. SEVENTEETH CAUSE OF ACTION

**(Unjust Enrichment/Quasi-Contract Under Nevada Law)**
**(By Plaintiff Whetman on behalf of himself and the**
**Nevada Class, Against Defendant)**

163.    Plaintiff Whetman incorporates by reference each and every allegation contained above.

164.    Plaintiff Whetman brings his claim individually and on behalf of the members of the Nevada Class.

165.    Plaintiff Whetman and his fellow Nevada Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

166.    Under Nevada law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. As described above, Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Nevada tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

167.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Whetman and his fellow tenants as a result of the conduct alleged herein, thereby creating

a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Whetman and the Nevada class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Whetman and members of the Nevada class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

168.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Whetman and his fellow Nevada Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Whetman and the Nevada class for Defendant's unjust enrichment, as ordered by the Court.

## XX. <u>EIGHTEENTH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Whetman on behalf of himself and the Nevada Class, Against Defendant)**

169.    Plaintiff Whetman incorporates by reference each and every allegation contained above.

170.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Nevada law.

171.    An actual, present, and justiciable controversy exists between Plaintiff Whetman and the Nevada Class members and Defendant concerning their respective rights and duties. Plaintiff Whetman alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

172.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Nevada law that must be voided and returned.

173.    The Court should also issue corresponding prospective injunctive relief requiring

CLASS ACTION COMPLAINT

Defendant to stop collection of its late fees from Nevada renters consistent with Nevada law. If an injunction is not issued, Plaintiff Whetman and the Nevada Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Whetman and the Nevada Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

174.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Defendant from illegally collections thousands in late fees from the large number of Nevada citizens who rent homes from Defendant.

## XXI. <u>NINETEENTH CAUSE OF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Tennessee Law)**
**(By Plaintiff White on behalf of herself and the**
**Tennessee Class, Against Defendant)**

175.    Plaintiff White incorporates by reference each and every allegation contained above.

176.    Plaintiff White brings her claim individually and on behalf of the members of the Tennessee Class.

177.    Under Tennessee law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. There must exist a reasonable relationship between the amount and what might reasonably be expected in the event of a breach. Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Tennessee tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

178.    Plaintiff White and her fellow Tennessee Class members conferred benefits on

Defendant by paying late rent penalties that were improperly charged.

179.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff White and his fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff White and the Tennessee class.   Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.   Defendant's retention of those monies has caused injuries to Plaintiff White and members of the Tennessee class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

180.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff White and his fellow Tennessee Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff White and the Tennessee class for Defendant's unjust enrichment, as ordered by the Court.

## XXII. <u>TWENTIETH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff White on behalf of herself and the Tennessee Class, Against Defendant)**

181.     Plaintiff White incorporates by reference each and every allegation contained above.

182.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Tennessee law.

183.     An actual, present, and justiciable controversy exists between Plaintiff White and the Tennessee Class members and Defendant concerning their respective rights and duties. Plaintiff White alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases

constitute appropriate or legal "liquidated damages."

184.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Tennessee law that must be voided and returned.

185.    The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Tennessee renters consistent with Tennessee law. If an injunction is not issued, Plaintiff White and the Tennessee Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff White and the Tennessee Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

186.    Issuance of the requested injunction will serve the public interest by preventing Defendant from illegally collecting thousands in late fees from the large number of Tennessee citizens who rent homes from Defendant.

## XXIII. <u>TWENTY-FIRST CAUSE OF ACTION</u>

**(Violation of Texas Deceptive Trade Practices–Consumer Protection Act – Tex. Bus. & Com. Code § 17.41 Et Seq.)**
**(By Plaintiff Osborn on behalf of herself and the Texas Class, Against Defendant)**

187.    Plaintiff Osborn incorporates by reference each and every allegation contained above.

188.    Defendant is a "person," as defined by Texas Business & Commerce Code § 17.45(3). Plaintiff Osborn and the Texas Class members are "consumers" as defined by Texas Business & Commerce Code § 17.45(4). Defendant offered or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Texas Business & Commerce Code § 17.45(6).

189.    Under Texas law, a liquidated damages provision is only lawful in an amount that

is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.  Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Texas tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an unconscionable and illegal penalty

190.    Defendant's representation that the late fees were lawful is a violation of the Texas Deceptive Trade Practices Act, which prohibits representing that an agreement confers obligations which are prohibited by law. Tex. Bus. & Com. Code § 17.46(b)(12).

191.    Plaintiff Osborn and Texas Class members were aggrieved by and have suffered injury in fact and lost money or property as a result of Defendant's violation of the Texas Deceptive Trade Practices Act, as they were charged and paid late fees in excess of what is legally permissible, and were represented that the late fee was lawful.

192.    Plaintiff Osborn and the Texas Class members seek all monetary and non-monetary relief allowed by law, including a $100 penalty per incident, treble damages, and attorney's fees and costs.

### XXIV. <u>TWENTY-SECOND CAUSE OF ACTION</u>

**(Unjust Enrichment/Quasi-Contract Under Texas Law)**
**(By Plaintiff Osborn on behalf of herself and the**
**Texas Class, Against Defendant)**

193.    Plaintiff Osborn incorporates by reference each and every allegation contained above.

194.    Plaintiff Osborn brings her claim individually and on behalf of the members of the Texas class.

195.    Under Texas law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties

of proof of loss. Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Texas tenants pay rent late. The fact that Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

196.    Plaintiff Osborn and her fellow Texas Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

197.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Osborn and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Osborn and the Texas class.  Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.  Defendant's retention of those monies has caused injuries to Plaintiff Osborn and members of the Texas class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

198.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Osborn and her fellow Texas Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Osborn and the Texas class for Defendant's unjust enrichment, as ordered by the Court.

## XXV. <u>TWENTY-THIRD CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Osborn on behalf of himself and the Texas Class, Against Defendant)**

199.    Plaintiff Osborn incorporates by reference each and every allegation contained above.

200.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here,

that violate Texas law.

201.    An actual, present, and justiciable controversy exists between Plaintiff Osborn and the Texas Class members and Defendant concerning their respective rights and duties. Plaintiff Osborn alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

202.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Texas law that must be voided and returned.

203.    The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Texas renters consistent with Texas law. If an injunction is not issued, Plaintiff Osborn and the Texas Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Osborn and the Texas Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

204.    Issuance of the requested injunction will serve the public interest by preventing Defendant from illegally collecting thousands in late fees from the large number of Texas citizens who rent homes from Defendant.

## XXVI.  TWENTY-FOURTH CAUSE OF ACTION

**(Violation of Washington Consumer Protection Act –
Rev. Code Wash. § 19.86.010 Et Seq.)
(By Plaintiff Kerr on behalf of herself and the
Washington Class, Against Defendant)**

205.    Plaintiff Kerr incorporates by reference each and every allegation contained above.

206.    Defendant is a "person," as defined by the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010 *et seq.*) ("WCPA"). Wash. Rev. Code § 19.86.010(1). Defendant offered, or sold goods or services in Washington and engaged in trade or commerce directly or

indirectly affecting the people of Washington, as defined by the WCPA. Wash. Rev. Code § 19.86.010(2). Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the WCPA. Wash. Rev. Code § 19.86.020.

207.    Defendant's policy and practice with respect to imposing excessive late fees is unfair under the WCPA because it is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including having a great and deleterious effect on its victims (including Plaintiff Kerr, the Washington Class, and competitors) and it has no legal justification.

208.    Defendant's actions had an impact on the public interest. Specifically, at least 3,000 individuals rent homes from Defendant in Washington, and are subject to Defendant's illegal late fee policies. Defendant's late fee charges induced Washington residents to pay thousands of dollars in illegal late fees. Defendant charged these illegal late fees as a standard pattern and course of conduct, charged them before Plaintiff Kerr was first charged a late fee, and still charges these late fees, therefore there is a substantial potential for repetition of Defendant's illegal conduct.

209.    Defendant's late fee policies solely benefit Defendant, by allowing it to illegally profiteer off those who are either unable to afford a home or lost their home and are forced to rent. Defendant's late fee policies allow it to both avoid the additional costs borne by its lawful competitors (e.g., attempting to ascertain potential damages caused by late payment of rent prior to drafting or signing the lease agreement with a late fee), while charging an amount that is unconscionable in comparison to Defendant's actual loss, if any, harming both renters and lawful competition and violating the law.

210.    Defendant used a contract of adhesion presented on a take-it-or-leave-it basis, and on information and belief the intent of Defendant's late fee provision is to penalize and coerce compliance with the contract, rather than provide actual damages relating to the late payment of rent. The fact that Defendant uses an automated process to impose its late fees, and that its late fees are the same regardless of the amount of rent or the location of the home at issue further demonstrate that the late fee is not a reasonable estimate of Defendant's losses. Defendant's

stacking and/or pyramiding late fees violates the same public policies embodied in WCPA.

211.    Additionally, Defendant's business practices offend established public policies regarding the protection of consumers and tenants and the practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Indeed, these practices cause tenants to have to pay substantial sums that are completely divorced from whatever minimal inconvenience or damage, if any, might be felt by the landlord as a result of some late rent, or partial payment of rent.  Not only do these practices result in the taking of unfair sums of money from consumers, but also to ruined credit and unlawful evictions.  These harms to the consumer greatly outweigh the utility, if any, of the practice.

212.    Plaintiff Kerr and Washington Class members were aggrieved by and have suffered injury in their business property pursuant to WCPA, as they were charged and paid late fees in excess of what is legally permissible.

213.    As a result of these unlawful business acts and practices, Defendant has reaped unfair benefits and illegal profits, at the expense of Plaintiff Kerr and all similarly situated tenants and former tenants. Plaintiff Kerr and Washington Class members are therefore entitled to an order of damages, attorney's fees, and court costs under Washington Statute § 501.211.

## XXVII. TWENTY-FIFTH CAUSE OF ACTION

**(Unjust Enrichment/Quasi-Contract Under Washington Law)**
**(By Plaintiff Kerr on behalf of herself and the**
**Washington Class, Against Defendant)**

214.    Plaintiff Kerr incorporates by reference each and every allegation contained above.

215.    Plaintiff Kerr brings her claim individually and on behalf of the members of the Washington Class.

216.    Under Washington law, a liquidated damages provision is only lawful in an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. In addition, the harm caused by a breach must be incapable or very difficult to ascertain. Defendant's late fee is not reasonable in light of the anticipated or actual loss faced by Defendant when Washingtonians tenants pay rent late. The fact that

Defendant automates the imposition of its late fees, and that it utilizes the same late fee amount regardless of rent or location of the rental, among other facts described above, make clear that the late fees are not reasonable in light any anticipated or actual loss caused by the late payment of rent and is therefore an illegal penalty.

217.    Plaintiff Kerr and her fellow Washington Class members conferred benefits on Defendant by paying late rent penalties that were improperly charged.

218.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Kerr and her fellow tenants as a result of the conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff Kerr and the Washington class.    Retention of those monies under these circumstances is unjust and inequitable because it was illegal and improper to charge those fees.    Defendant's retention of those monies has caused injuries to Plaintiff Kerr and members of the Washington class because they should not have had to pay those fees and they would not have paid those fees if they had known it was illegal to charge them.

219.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Kerr and her fellow Washington Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff Kerr and the Washington class for Defendant's unjust enrichment, as ordered by the Court.

### XXVIII. <u>TWENTY-SIXTH CAUSE OF ACTION</u>

**(Declaratory Judgment of Invalidity of the Late Rent Penalties)**
**(By Plaintiff Kerr on behalf of herself and the Washington Class, Against Defendant)**

220.    Plaintiff Kerr incorporates by reference each and every allegation contained above.

221.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate Washington law.

222.    An actual, present, and justiciable controversy exists between Plaintiff Kerr and the Washington Class members and Defendant concerning their respective rights and duties.

Plaintiff Kerr alleges that Defendant's late fee policies and practices constitute imposition of illegal penalties. Defendant contends that its late fee practices and provisions in its leases constitute appropriate or legal "liquidated damages."

223.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that Defendant's late fees are illegal penalties under Washington law that must be voided and returned.

224.    The Court should also issue corresponding prospective injunctive relief requiring Defendant to stop collection of its late fees from Washington renters consistent with Washington law. If an injunction is not issued, Plaintiff Kerr and the Washington Class will suffer further injury, the risk of which is real, immediate, and substantial. If Defendant's late fees are declared illegal penalties, the hardship to Plaintiff Kerr and the Washington Class if an injunction does not issue exceeds the hardship to Defendant, as Defendant will merely be forced to comply with its pre-existing legal obligations.

225.    Issuance of the requested injunction will serve the public interest by preventing Defendant from illegally collecting thousands in late fees from the large number of Washington citizens who rent homes from Defendant.

## XXIX. <u>PRAYER FOR RELIEF</u>

Plaintiffs pray for judgment against Defendant, as follows:

1.    That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, and define the Classes as requested above;

2.    That the Court find and declare that Defendant's late fees and policy and practice of assessing such late fees against Plaintiffs and Class members are unlawful;

3.    For compensatory damages according to proof;

4.    For disgorgement of all monies which Defendant has illegally gained;

5.    For restitution according to proof at trial;

6.    For an order enjoining Defendant from any further illegal acts and practices with

respect to the late rent penalties;

7.     For statutory penalties as identified herein;

8.     For treble damages as pled herein;

9.     For pre-judgment interest;

10.    For costs of suit;

11.    For reasonable attorneys' fees; and

12.    For such other and further relief as this Court may deem just and proper.

## REQUEST FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

DATED:  January 13, 2021         Respectfully submitted,

**SILVERMAN THOMPSON SLUTKIN & WHITE**

By:       /s/ William N. Sinclair

William N. Sinclair (Bar # 28833)
201 N Charles St 26th Floor
Baltimore, MD 21201
Telephone: (410) 385-2225
Facsimile: (410) 385-9116
Email: bsinclair@silvermanthompson.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (*Pro Hac* Vice To Be Filed)
Alex Tomasevic (*Pro Hac Vice* To Be Filed)
Ethan T. Litney (*Pro Hac Vice* To Be Filed)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: elitney@nicholaslaw.org