UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCINE McCUMBER *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2194-B |
| | § | |
| INVITATION HOMES, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is Invitation Homes, Inc. ("Invitation Homes")'s Motion to Dismiss (Doc. 58). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Invitation Homes's motion.

I.

BACKGROUND[1]

This is a putative class action[2] dispute about the legality of late-fee amounts for late rent payments. The Plaintiffs consist of former renters of Invitation Homes's properties in ten different states who were charged late fees. Doc. 57, Am. Compl., ¶¶ 26, 28–36. Plaintiff Francine McCumber rented a home in Arizona, Plaintiff Erin Bird rented a home in Colorado, Plaintiff Melissa Lynch rented homes in Florida, Plaintiff La Shay Harvey rented a home in Georgia, Plaintiff Maryah Marciniak rented a home in Illinios, Plaintiff Brian Majka rented a home in North Carolina, Plaintiff

---

[1] The Court draws the following factual account from Plaintiffs' Amended Complaint (Doc. 57).

[2] Plaintiffs have not moved to certify the class under Federal Rule of Civil Procedure 23. *See* Doc. 59, Pls.' Resp., 9 ("Plaintiffs have not moved for class certification.").

Chad Whetman rented a home in Nevada, Plaintiff Tracy White rented a home in Tennessee, Plaintiff Rachel Osborn rented a home in Texas, and Plaintiff Teresa Kerr rented a home in Washington (collectively, "Plaintiffs"). *Id.* ¶¶ 9–18. Each represents a putative subclass representing plaintiffs in their respective states. *Id.* ¶ 47.

Invitation Homes "owns, leases, and manages more than 82,000 rental homes across the country" with "uniform late rent penalty policies across all their residential properties in a state." *Id.* ¶ 3. If a renter fails to pay their rent on time or within the applicable grace period, Invitation Homes charges a late fee and threatens eviction. *Id.* ¶ 24. Invitation Homes "often tacks on a 'legal' fee which can be $75 or more." *Id.* The late fees can result in "pyramiding" penalties for renters if they carry over a late fee from month to month. *Id.* ¶ 41.

Plaintiffs contend that each of the late fees "had little to no relation to the actual damages" sustained by Invitation Homes from the late payment of rent. *Id.* ¶¶ 26, 28–36. As such, according to Plaintiffs, these late fees amount to an "illegal penalty" in violation of each state's laws prohibiting "liquidated damages" unless "(a) it would be extremely difficult or infeasible to calculate actual damages from the late payment; and (b) they undertake a sufficient endeavor to set a reasonable amount in light of the actual harm." *Id.* ¶¶ 38–39 (emphasis omitted) (citing Restatement (Second) of Contracts § 356(1)).

Plaintiffs filed their original complaint on January 14, 2021, in the United States District Court for the District of Maryland. Doc. 1, Compl. The Maryland District Court transferred the case to the United States District Court for the Northern District of Texas on September 9, 2021. Doc. 31, Mem. Op. & Order, 7. Plaintiffs amended their complaint on January 20, 2022; the Amended Complaint includes claims for unjust enrichment for each of the Plaintiffs' states,

declaratory judgment claims for each of the Plaintiffs' states except Florida and Colorado, and statutory claims for each of the Plaintiffs' states except Colorado, Tennessee, and Nevada. Doc. 57, Am. Compl., ¶¶ 56–225. On February 22, 2022, Invitation Homes moved to dismiss the amended complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Doc. 58, Mot. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARDS

A.    *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

B.      *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying Rule 9(b) to fraud and negligent misrepresentation claims that arose out of the same set of facts but were contained in separate counts in the complaint). A fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

## III.

## ANALYSIS

Below, the Court addresses Invitation Homes's general arguments for dismissal before addressing the arguments for dismissal of the class allegations. The Court then addresses the particularized arguments for each claim, beginning with the unjust enrichment claims and then the separate state statutory claims.

### A.    *Specificity of the Allegations and Standing*

Invitation Homes begins with two general arguments for why the Amended Complaint fails to plausibly state a claim. First, Invitation Homes argues that the Amended Complaint leaves out crucial allegations needed to evaluate the plausibility of the claims. Doc. 58, Mot., 17–19. Specifically, Invitation Homes states that Plaintiffs fail to state the amount of their monthly rent, the amount of late fees, which late fees were paid, and when the fees were paid. *Id.* at 18. Invitation Homes contends that without these allegations, the Court cannot address the issues of standing and statute of limitations. *Id.* at 18–19. Second, Invitation Homes asserts that labeling the late fees as "egregious" or "unlawful" fails to state a claim when the fees comply with the respective jurisdiction's laws. *Id.* at 19–21.

Plaintiffs respond that Invitation Homes requires "an unnecessary level of specificity" akin to the Rule 9(b) pleading requirement. Doc. 59, Pls.' Resp., 6. And Invitation Homes possesses the records for all late fees assessed against each of the Plaintiffs, which supply all the information that it says is missing from the Amended Complaint, according to Plaintiffs. *Id.* at 7. Plaintiffs next argue that the Amended Complaint provides as much detail as *Zeff v. Greystar Real Estate Partners, LLC*, 2021 WL 632614, at *1 (N.D. Cal. Feb. 18, 2021) and that court found the complaint survived a

motion to dismiss under Rule 12(b)(6). *Id.* at 7–8. Plaintiffs further aver that they have standing regardless of their payment of the late fee because they "were subject to the unlawful conduct." *Id.* at 8. Lastly, Plaintiffs argue that the state late-fee statutes establish a ceiling, which do not make Invitation Homes late fees "*per se* lawful." *Id.* at 23–24.

In *Zeff*, the plaintiff brought a putative class action against the largest owner of apartments in the United States for charging "illegal late-fee penalties for late rent and utility payments and unlawfully withhold[ing] tenants' security deposits beyond 21 days of move-out." 2021 WL 632614, at *1. The landlord charged a $100 late fee for late rent payments or late utility fees and subsequently "stacked" another $100 late fee if the previous month's payments and late fees were not paid in full. *Id.* The plaintiff became caught in a cycle of owing late fees for failing to pay the prior month's late fee. *Id.* at *2. The landlord also failed to refund the plaintiff's $700 security deposit within twenty-one days as required by state law. *Id.* The court found these allegations plausibly pleaded claims for violations of state liquidated damages statutes. *Id.* at *5–7.

The Court recognizes that the plaintiff in the *Zeff* case pleaded more detailed allegations than the current Plaintiffs, but that does not prove fatal to Plaintiffs' case. As discussed in detail below, the Court will allow Plaintiffs to replead their allegations to include a class period for each of the class claims. *See infra* Section III(A). Inclusion of the class period will naturally hinge on the statute of limitations for Plaintiffs' claims, addressing one of Invitation Homes's arguments.

As for standing, Plaintiffs are only required to plead general allegations of injury resulting from Invitation Homes's conduct. Plaintiffs have sufficiently alleged that Invitation Homes harmed each of the Plaintiffs by charging a late fee. Doc. 57, Am. Compl., ¶¶ 26, 28–36. This is enough at the pleading stage to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At

the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–889 (1990))).

The Court **DENIES** Invitation Homes's motion as to the arguments regarding specificity of the allegations and standing.

B.    *Dismissal of the Class*

Plaintiffs brings a class action for ten separate subclasses for "all of Defendant's [specified state] tenants who were charged penalties or fees for paying rent Defendant deemed as late or deficient." Doc. 57, Am. Compl., ¶ 47. The individual subclasses include tenants in Arizona, Colorado, Florida, Georgia, Illinois, Nevada, North Carolina, Tennessee, Texas, and Washington. *Id.*

"Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

Invitation Homes argues for dismissal of the plaintiff classes because the Amended Complaint "seeks to assert class claims involving various and differing state laws," failing "the commonality and superiority requirements of Rule 23(a) and 23(b)(3)." Doc. 58, Def.'s Mot., 35–36 (quoting *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)). Invitation Homes further contends that the class allegations fail "because they do not identify the relevant time period and define the class to include those who suffered no injury." *Id.* at 36.

Plaintiffs contend that "[m]otions to strike class allegations at the pleading stage are highly disfavored." Doc. 59, Pls.' Resp., 9 (quoting *Azad v. Tokio Marine HCC-Med. Ins. Servs. LLC*, 2017

WL 3007040, at *8 (N.D. Cal. July 14, 2017)). Plaintiffs further argue that they establish separate subclasses, as opposed to one nationwide or multistate class, which distinguishes this case from Invitation Homes's caselaw. *Id.* at 10–11.

Invitation Homes's first argument fails because the Plaintiffs bring ten subclasses and not a nationwide or multistate class. The case cited by Invitation Homes dismissed the national and multistate classes because of the conflict between the various state laws. *See Cowen*, 2017 WL 4572201, at *4–5. Such is not the case here.

The second argument succeeds because the classes lack any definitive class period and thus are not ascertainable. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). The subclasses do not include a time period for when the proposed classes were charged a late fee.[3] *See* Doc. 57, Am. Compl., ¶ 47. The lack of a temporal limitation proves fatal for the class allegations, because the Court cannot determine the beginning or end date for each of the proposed subclasses. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the class allegations.

C.   *Declaratory Judgment–Arizona, Georgia, Illinois, North Carolina, Nevada, Tennessee, Texas, Washington—Counts 3, 10, 13, 16, 18, 20, 23, 26*

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

---

[3] Plaintiffs fare no better by proposing that the Court determine the time period for each proposed class. Doc. 57, Am. Compl., ¶ 46. While the Court may limit a class period, Plaintiffs fail to even suggest a class period. *See generally Rendon v. Glob. Tech. Sols.*, LLC, 2015 WL 8042169, at *10 (E.D. La. Dec. 4, 2015) (limiting an "arbitrary" class period). Because the Court offers Plaintiffs the opportunity to replead the class allegations, the Court will not plead the class period on Plaintiffs' behalf.

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts engage in a three-step analysis when determining whether a declaratory judgment action should proceed. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, the court asks whether it has subject matter jurisdiction because an "'actual controversy' exists between the parties." *Id.* Second, the "court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* Third, the court applies the factors from *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994) and examines "how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* "In this circuit, 'district courts . . . regularly reject declaratory judgment claims seeking the resolution of issues that are the mirror image of other claims in a lawsuit.'" *DM Arbor Ct., Ltd. v. City of Hous.*, 2021 WL 4926015, at *12 (S.D. Tex. Oct. 21, 2021) (listing cases). A declaratory judgment is duplicative where the relief flowing from the declaration is the same as the resolution of another claim. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 450–51 (5th Cir. 2019) ("The constitutional claims at issue in this case are dissimilar from a breach of contract action" because the "request for prospective relief appears distinct from [the] claim for monetary damages."). However, a court cannot dismiss a declaratory judgment "on the basis of whim or personal disinclination." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir.1993) (quoting *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir.1989)).

Plaintiffs bring eight claims under the Declaratory Judgment Act requesting that the Court "declar[e] . . . that Defendant's late fees are illegal penalties under [specified state's] law that must be voided and all fees collected returned." Doc. 57, Am. Compl., ¶¶ 70, 117, 138, 160, 172, 184, 202, 223. Because Plaintiffs bring the same claim for each state, the Court analyzes the claims together.

Invitation Homes argues for dismissal of all eight declaratory judgment claims because they are redundant of the state-law claims that seek the same relief. Doc. 58, Def.'s Mot., 27. Further, "[o]rdinary contract disputes and landlord-tenant disputes . . . fall outside the purposes of the [Declaratory Judgment Act]," according to Invitation Homes. *Id.*

Plaintiffs respond that Invitation Homes relies on one of the seven *Trejo* factors and ignores the other six. Doc. 59, Pls.' Resp., 24–25. Additionally, Plaintiffs argue that the declaratory judgment claims are not duplicative of the state-law claims if the Court dismisses the state law claims. *Id.* at 25. Further, dismissal of the state law claims will not resolve the "legality and enforceability of Defendant's late fee policies," according to Plaintiffs. *Id.*

For the first step of the declaratory judgment analysis, the Court finds "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The parties disagree over the legality of Invitation Homes's late fee policies. *See* Doc. 57, Am. Compl., ¶¶ 9–18; Doc. 58, Def.'s Mot., 20–21. Further, the parties' legal interests are adverse because a finding of illegality would render Invitation Homes's assessment of late fees improper. Because a substantial controversy exists between the parties, the Court has subject matter jurisdiction over the declaratory judgment claims.

The second step requires the Court to determine whether it possesses the authority to grant the relief requested by Plaintiffs. *Orix Credit All.*, 212 F.3d at 895. A district court lacks authority when "1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the

Anti–Injunction Act." *Travelers Ins. Co.*, 996 F.2d at 776 (emphasis omitted). Because there are no pending state proceedings, the Court has no reason to abstain from exercising its authority and therefore possesses the authority to grant the declaratory judgments requested by Plaintiffs.

The third step asks the Court whether it should exercise its discretion to "decide or dismiss [the] declaratory judgment action[s]." *Orix Credit All.*, 212 F.3d at 895. The Court must examine the *Trejo* factors:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Via v. Blanchard*, 2021 WL 4902391, at *12 (N.D. Tex. July 30, 2021) (quoting *Trejo*, 39 F.3d at 590–91).

The *Trejo* factors support dismissal of the declaratory judgment claims. First, there are no pending state actions. Second, Plaintiffs did not file this suit in anticipation of Invitation Homes filing a lawsuit. Third, Invitation Homes does not accuse Plaintiffs of forum shopping. Factors four and seven are inapplicable to this case. Fifth, federal court is convenient for the parties because Invitation Homes is located in Texas and Plaintiffs are located in each of their individual states. However, sixth, and most importantly, these claims can be properly determined via the individual state law claims. Giving appropriate weight to each factor, the factors in total weigh in favor of dismissal.

The declaratory judgment claims duplicate the state law claims. *See Via*, 2021 WL 4902391, at *12 (dismissing declaratory judgment claim that duplicated the substantive claims, including an unjust enrichment claim). *See generally Assure re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, 2021 WL 2402485, at *8 (N.D. Tex. June 11, 2021) ("A declaratory judgment action is redundant for this reason if resolution of the affirmative claims and counterclaims before the Court would resolve all questions that the declaratory judgment action raises."). Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the declaratory judgment claims.

D.      *Unjust Enrichment*

Invitation Homes argues that each of the unjust enrichment claims are deficient because they fail to plead facts of "*why* the late fees are unlawful." Doc. 58, Def.'s Mot., 22. The claims also fail, according to Invitation Homes, because Plaintiffs cannot assert a quasi-contract claim "when there is an express contract governing the parties' relationship." *Id.* at 22–23. Additionally, Invitation Homes avers that Plaintiffs "cannot plausibly allege that there is anything 'unjust'" about the late fees. *Id.* at 24–25. Further, Invitation Homes contends that Plaintiffs' "one-size-fits-all approach" to pleading the claims fails to allege each of the elements required in the different jurisdictions. *Id.* at 23–24.

Plaintiffs respond that no "enforceable contract controls Plaintiffs' remedies," so their claim is allowed. Doc. 59, Pls.' Resp., 11. Alternatively, Plaintiffs claim that the contracts are void because the late-fee provision is unenforceable for imposing an illegal penalty. *Id.* at 11–12. Plaintiffs contend that several courts have allowed unjust enrichment claims based on a liquidated damages provision. *Id.* at 14 (first citing *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1267 (W.D. Wash. 2009); and then citing *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 306–08 (E.D.N.Y.

2010)). Further, they maintain that the "entire Complaint" sufficiently alleges each of the elements for the individual state claims and explains how Invitation Homes's late fees are unjust. *Id.*

Invitation Homes's first argument fails because Plaintiffs sufficiently allege the unlawfulness of Invitation Homes's late fees. Plaintiffs allege that Invitation Homes's late fee policy violates each jurisdiction's laws prohibiting arbitrary liquidated damages. Doc. 57, Am. Compl., ¶¶ 5, 38–39. Thus, Plaintiffs sufficiently pleaded what makes the late fees unlawful.

Invitation Homes's second argument fails because Plaintiffs argue that each of the contracts are illegal or void and therefore unenforceable. Each of the jurisdictions allows unjust enrichment claims—despite the existence of a contract that governs the parties relationship—when a plaintiff contests the enforceability of terms to a contract. *See Isofoton, S.A. v. Giremberk*, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006); *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010); *Carrera v. UPS Supply Chain Sols., Inc.*, 2012 WL 12860910, at *8 (S.D. Fla. Sept. 21, 2012); *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1340 (N.D. Ga. 2008); *Cove Mgmt. v. AFLAC, Inc.*, 986 N.E.2d 1206, 1215 (Ill. App. Ct. 2013); *Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 167 (W.D.N.C. 2019); *DFR Apparel Co. v. Triple Seven Promotional Prods., Inc.*, 2014 WL 4891230, at *3 (D. Nev. Sept. 30, 2014); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998); *R. Conrad Moore & Assocs., Inc. v. Lerma*, 946 S.W.2d 90, 96–97 (Tex. App.—El Paso 1997, writ denied).

Invitation Homes's third argument also fails at this stage of the proceedings. Invitation Homes cites to *Heldenfels Brothers, Inc. v. City of Corpus Christi* to argue that unjust enrichment requires "fraud, duress, or the taking of an undue advantage." Doc. 59, Def.'s Mot., 24 (citing 832 S.W.2d 39, 41 (Tex. 1992)). While Plaintiffs do not allege any fraud or duress, they do allege that

Invitation Homes took undue advantage of renters. Doc. 57, Am. Compl., ¶¶ 40–43 (alleging that Invitation Homes's share of the rental market allows it to take unfair advantage of renters). Invitation Homes also cites to *Freeman Industries, LLC v. Eastman Chemical Co.* to argue that Plaintiffs must also allege the late fees are "unjust." Doc. 59, Def.'s Mot., 24 (citing 172 S.W.3d 512, 525 (Tenn. 2005)). Plaintiffs sufficiently allege the late-fee provisions are illegal and unenforceable, and thus, unjust. Doc. 57, Am. Compl., ¶¶ 5, 38–39; *see Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) ("The viability, and ultimately the success, of appellant's unjust enrichment claim thus depends on whether the late-fee provision in appellant's lease is legitimate and enforceable."). At the motion-to-dismiss stage, the Court finds Plaintiffs sufficiently alleged the late-fee provisions are unjust.

Below, the Court addresses Invitation Homes's fourth argument, whether Plaintiffs allege the individual elements for their unjust enrichment claims.

### 1.    Arizona—Count 2

"An unjust enrichment claim requires proof of five elements: '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011)). Plaintiffs fail to allege the absence of an adequate remedy at law. *See* Doc. 57, Am. Compl., ¶¶ 61–66. Thus, Plaintiffs failed to adequately plead the elements of this claim. *See Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d 899, 915 (M.D. Tenn. 2016) (applying Arizona law to dismiss an unjust enrichment claim for failing to

plead the absence of an adequate remedy at law). The Court **DISMISSES** this claim **WITHOUT PREJUDICE**.

### 2.  Colorado—Count 4

Under Colorado law, the elements of an unjust enrichment are: "(1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) (citing *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)). Plaintiff sufficiently alleged each of these elements in the Amended Complaint. Plaintiffs allege that they paid late fees to Invitation Homes and that these late fees are illegal. Doc. 57, Am. Compl., ¶¶ 5, 38–39. Therefore, the Court **DENIES** Invitation Homes's motion to dismiss as to this claim.

### 3.  Florida—Count 6

In Florida, "[t]he essential elements of unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Gutierrez v. Sullivan*, 2022 WL 220949, at *3 (Fla. Dist. Ct. App. Jan. 26, 2022) (citing *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994)). These elements closely mirror those for unjust enrichment under Colorado law. For the same reasons as the Colorado claim, the Court **DENIES** Invitation Homes's motion to dismiss as to this claim.

### 4.    Georgia—Count 9

Under Georgia law, "[a] claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Campbell v. Ailion*, 790 S.E.2d 68, 73 (2016) (quoting *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011)). Plaintiffs question the legality of the late-fee provisions, Doc. 57, Am. Compl., ¶¶ 5, 38–39, therefore, they sufficiently pleaded this claim just like the Colorado and Florida claims that have similar elements. For the same reasons as the Colorado and Florida claims, the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

### 5.    Illinois—Count 12

To plead unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). "[Although] a plaintiff may plead claims alternatively based on express contract and an unjust enrichment, the unjust enrichment claim cannot include allegations of an express contract." *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012); *Pepper Constr. Co. v. Palmolive Tower Condos., LLC*, 2021 WL 4236109, at *16 (Ill. App. Ct. Sept. 17, 2021) ("A party cannot assert a claim on a contract implied in law if an express contract exists between the parties concerning the same subject matter."). Here, Plaintiffs' allegations rely on the express contract between the parties, which includes the late-fee provision. Doc. 57, Am. Compl., ¶¶ 131–34. Thus, the Court **DISMISSES** this claim **WITH PREJUDICE**

because Plaintiffs are unable to plead such a claim under Illinois law without relying on the express contract between the parties.[4]

### 6.   North Carolina—Count 15

Under North Carolina law, there are five elements for unjust enrichment: (1) "one party must confer a benefit upon the other party"; (2) "the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances"; (3) "the benefit must not be gratuitous"; (4) "the benefit must be measurable"; and (5) "the defendant must have consciously accepted the benefit." *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 750 S.E.2d 555, 559 (N.C. Ct. App. 2013) (citations and quotations omitted). "[A]n express contract precludes an implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 124 S.E.2d 905, 908 (1962). But a plaintiff may plead in the alternative in North Carolina. *Clark v. Burnette*, 2020 WL 469428, at *6 (N.C. Super. Ct. Jan. 28, 2020) (citing N.C. Gen. Stat. § 1A-1, Rule 8(e)(2)). Because North Carolina law allows Plaintiffs to plead in the alternative, this claim is not precluded by the express contract. Further, the Court finds Plaintiffs sufficiently alleged the elements of this claim in their Amended Complaint and **DENIES** Invitation Homes's motion to dismiss as to this claim.

### 7.   Nevada—Count 17

Under Nevada law "[u]njust enrichment has three elements: 'the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain

---

[4] A plaintiff also may not bring a claim for unjust enrichment without a private cause of action. *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008). Because Plaintiffs' Illinois statutory claim fails, this claim fails for that reason as well. *See infra* Section III(D)(5).

the benefit without payment of the value thereof.'" *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021) (quoting *Cert. Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012)). Plaintiffs sufficiently pleaded this claim just like the Colorado, Florida, and Georgia claims that have similar elements. For the same reasons as the Colorado, Florida, and Georgia claims, the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

8.    Tennessee—Count 19

In Tennessee "[t]he elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus.*, 172 S.W.3d at 525 (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (1966)). Plaintiffs sufficiently alleged each of these elements in the Amended Complaint. Plaintiffs allege that they paid late fees to Invitation Homes and that these late fees are illegal. Doc. 57, Am. Compl., ¶¶ 5, 38–39. Therefore, the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

9.    Texas—Count 22

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc.*, 832 S.W.2d at 41. Texas courts are split on whether unjust enrichment is a separate cause of action. *Compare Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) (holding that unjust enrichment is not a separate cause of action), *with SVT, LLC v. Seaside Vill. Townhome Assoc., Inc.*, 2021 WL 2800463, at *5 (Tex. App.—Houston [14th Dist.] July 6, 2021, no pet.) (holding that unjust enrichment is a separate cause of action)). Plaintiffs plead neither fraud

-18-

nor duress so their claim relies on Invitation Homes having taken undue advantage of them. *See generally* Doc. 57, Am. Compl., ¶ 37 (alleging Defendants possess "unchecked power to collect whatever late fee it wants, *when* it wants"). Because the Court finds that Plaintiffs sufficiently allege that Invitation Homes took undue advantage of them and Plaintiffs' other Texas claim survives, *see supra* Section III(D)(7), the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

    10.    <u>Washington—Count 25</u>

Under Washington law, unjust enrichment requires three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Plaintiffs sufficiently alleged each of these elements in the Amended Complaint. Therefore, the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

*E.*    *State Statutory Claims*

    1.    <u>Arizona Illegal Penalty Claim—Ariz. Rev. Stat. § 47-2718—Count 1</u>

Invitation Homes argues that Plaintiffs "merely regurgitat[e] the elements of a cause of action" without providing factual allegations. Doc. 58, Def.'s Mot., 28.

Plaintiffs respond that the Arizona statute prohibits liquidated damages provisions if one can easily calculate the loss and there is no loss or the amount of damages is disproportionate to the actual loss. Doc. 59, Pl.'s Resp., 15.

The relevant Arizona statute mirrors the Uniform Commercial Code and reads:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

Ariz. Rev. Stat. Ann. § 47-2718(A). This provision only applies "to transactions in goods." *Id.* § 47-2102. A real estate lease is not a good and is not covered by the UCC. *Id.* § 47-2105 ("'Goods' means all things . . . which are movable at the time of identification to the contract for sale . . . ."). *See generally Pac. Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.*, 730 P.2d 273, 277 (Ariz. Ct. App. 1986) ("Article 2 applies by analogy to the sales aspects of leases of goods."); *Generations Ranch, LLC v. Zarbock*, 2012 WL 161814, at *3 (Ariz. Ct. App. Jan. 19, 2012) ("The UCC applies only to transactions involving goods, not services."). Thus, Plaintiffs cannot state a claim under Ariz. Rev. Stat. Ann. § 47-2718(A) for a residential lease and this claim is **DISMISSED WITH PREJUDICE**.

> 2.   Florida Deceptive and Unfair Trade Practices Act Violation—Fla. Stat. § 501.201—Count 5

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fl. Stat. Ann. § 501.204(1). "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). "A deceptive practice is one that is 'likely to mislead' consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001)) (cleaned up). An injury for an unfair practice: "(1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) must

be an injury that consumers themselves could not reasonably have avoided." *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1098 (Fla. Dist. Ct. App. 2014).

Invitation Homes argues that the FDUTPA does not cover a challenge to the contract terms or a breach-of-contract claim. Doc. 58, Def.'s Mot., 29. Further, Plaintiffs may only state a claim if they "could not reasonably have avoided" the late fee, but Plaintiffs could have avoided the late fee by paying on time, according to Invitation Homes. *Id.* at 30 (quoting *Porsche Cars*, 140 So.3d at 1098). The test, Invitation Homes argues, is "whether [Plaintiffs] had knowledge that [they] agreed to pay a late fee at the time [they] paid it." Doc. 60, Def.'s Reply, 6 (quoting *Sanchez v. Time Warner, Inc.*, 1999 WL 1338446, at *1 (M.D. Fla. Sept. 27, 1999)).

Plaintiffs contend that they sufficiently pleaded an FDUTPA claim by pleading the two prongs used by Florida courts to analyze a liquidated damages provision. Doc. 59, Pl.'s Resp., 15–16. Thus, the "unlawful late fee provisions fall within the ambit of unfair conduct under the [F]DUPTA[,]" according to Plaintiffs. *Id.* at 16. Further, Plaintiffs claim that the reasonable avoidance doctrine is inapplicable to this case because "reasonable consumers would have no idea whether a late fee in a residential lease agreement is a lawful liquidated damages provision or an unlawful penalty under Florida law." *Id.* at 16–17.

But Plaintiffs ask the wrong questions. The question is not whether a consumer would know the late fee is unlawful, but whether the consumer "may act to avoid injury before it occurs if they have reason to anticipate the impending harm and the means to avoid it." *Orkin Exterminating Co., v. F.T.C.*, 849 F.2d 1354, 1365 (11th Cir. 1988) (quoting *In re Orkin Exterminating Co.*, 108 F.T.C. 263, 3636 (1986)). *See generally Sanchez v. Time Warner, Inc.*, 1999 WL 1338446, at *1 (M.D. Fl. Sept. 27, 1999) ("Contrary to Plaintiff's assertions, the issue is not whether Plaintiff paid the late fees

-21-

without knowledge that it was grossly disproportionate to Defendants' actual damages. The issue is whether she had knowledge that she had agreed to pay a late fee at the time she paid it."). As Invitation Homes correctly points out, Plaintiffs had the opportunity to avoid the injury by making on-time payments. Nothing is inherently unfair or deceptive about requiring on-time payment and then charging a fee for noncompliance. The Court **DISMISSES WITHOUT PREJUDICE** this claim.

### 3.   Georgia Uniform Deceptive Practices Act—Ga. Code § 10-1-370—Count 7

The Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") applies when a person:

(1) Passes off goods or services as those of another;
(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;
(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;
(8) Disparages the goods, services, or business of another by false or misleading representation of fact;
(9) Advertises goods or services with intent not to sell them as advertised;
(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or
(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Ga. Code Ann. § 10-1-372. Plaintiffs do not identify which subsection Invitation Homes allegedly violated. *See* Doc. 57, Am. Compl., ¶¶ 94–101; Doc. 59, Pls.' Resp, 17–18. And none of these

provisions appear to apply to the Plaintiffs' claim. Plaintiffs do not allege that Invitation Homes made any deceptive representations regarding their product, *see id.*, which is what the GUDTPA proscribes. *See Grumet v. Prof'l Acct. Mgmt., LLC*, 2013 WL 12382693, at *12 (N.D. Ga. Dec. 18, 2013) ("Like the Lanham Act, section 10-1-372 primarily deals with trade practices that are likely to cause confusion in the marketplace, such as passing off goods or creating a false impression as to the source, sponsorship or approval of goods.").

In fact, Plaintiffs cite to the Georgia Fair Business Practices Act of 1975 ("GFBPA") in their Response to try to finesse their claim into the GUDTPA. Doc. 59, Pls.' Resp., 17. But these statutory provisions prohibit different actions and reside in separate subparts of the Georgia Code. *Compare* Ga. Code Ann. § 10-1-372, *with* Ga. Code Ann. § 10-1-393; *compare* Ga. Code Ann. tit. 10, Ch. 1, art. 15, Pt. 1, Refs & Annos, *with* Ga. Code Ann. tit. 10, Ch. 1, art. 15, Pt. 2, Refs & Annos. Plaintiffs' caselaw also makes clear that the GFBPA and GUDTPA are separate causes of action. *Id.* at 17–18 (citing *Grumet*, 2013 WL 12382693, at *12–13). In *Grumet*, the court separately analyzed claims for violations of the GFBPA and the GUDTPA. *Id.* The court did not intermix the analyses and kept the causes of action separate. *See id.* Because of the conflict between the Amended Complaint and Plaintiffs' Response to the Motion to Dismiss, the Court is unsure whether Plaintiffs intended to plead a GFBPA claim or a GUDTPA claim. For the above reasons, the Court **DISMISSES** this claim **WITHOUT PREJUDICE**.

4.    Imposition of Illegal Penalty—Ga. Code § 13-6-7—Count 8

Georgia law allows for parties to agree to liquidated damages. Specifically, the relevant statute reads:

> If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby.

Ga. Code. Ann. § 13-6-7. "[T]he enforceability of a liquidated damages provision in a contract is a question of law for the court." *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co., Inc.*, 375 S.E.2d 222, 223 (Ga. 1989). "[Liquidated damages] provisions are enforceable if (1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss." *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 703 S.E.2d 687, 689 (Ga. Ct. App. 2010). A plaintiff carries their burden by showing any of the three are lacking. *Ultra Grp. of Cos., Inc. v. S & A 1488 Mgmt., Inc.*, 849 S.E.2d 531, 534 (Ga. Ct. App. 2020).

Invitation Homes argues that "Georgia *favors* late fee provisions in lease agreements." Doc. 58, Def.'s Mot., 31 (citing *Oami v. Delk Interchange*, 388 S.E.2d 706 (1989)). Further, Invitation Homes contends that Georgia courts have upheld late fees as high as 15% of the monthly rent. *Id.* at 32 (citing *Krupp Realty Co. v. Joel*, 309 S.E.2d 641 (1983)).

Plaintiffs contend that they sufficiently pleaded a claim under Ga. Code. Ann. § 13-6-7 and deciding against Plaintiffs would require the Court to draw factual inferences against Plaintiffs, which is "improper on a 12(b)(6) motion." Doc. 59, Pls.' Resp., 19

The Court agrees with Plaintiffs. The Amended Complaint at least alleges that the liquidated damages provision acted as a penalty. Doc. 57, Am. Compl., ¶ 105 ("Defendant's late fee provision is to penalize and coerce compliance with the contract."). This allegation alone suffices to plead a claim under Ga. Code. Ann. § 13-6-7. Determining whether the late fee acts as a penalty would require the Court to make a factual determination about the reasonableness of the late fee penalty,

which is inappropriate for a Rule 12(b)(6) motion. *See Holiday Hosp. Franchising, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2021 WL 3798561, at *4 (N.D. Ga. Aug. 26, 2021) ("[T]he [dismissal of the Ga. Code. Ann. § 13-6-7 claim] sought by the Defendants here appears premature" because "the reasonableness of the liquidated damages provision . . . rests upon a factual inquiry."). Thus, the Court **DENIES** Invitation Homes's motion to dismiss for this claim.

### 5.    Illinois Consumer Fraud Act—815 Ill. Comp. Stat. 505/1—Count 11

To state a claim under the Illinois Consumer Fraud Act ("ICFA"), a plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce."[5] *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). A private party plaintiff must also show actual damages proximately caused by defendant's conduct, *id.*, and may recover "for unfair as well as deceptive conduct." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud." *Burger v. Spark Energy Gas, LLC*, 507 F. Supp. 3d 982, 988 (N.D. Ill. 2020) (citing *Camasta*, 761 F.3d at 737). Plaintiffs plead an unfair practices claim, *see* Doc. 57, Am. Compl., ¶ 123 ("Defendant's policy and practice with respect to imposing excessive late fees is unfair. . . ."), which requires the Court to evaluate three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961.

---

[5] Under the ICFA, "'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, . . . real, personal or mixed, . . . and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. Ann. 505/1(f).

Invitation Homes argues that Plaintiffs fail to "provide factual support to 'unfair conduct.'" Doc. 60, Def.'s Reply, 8. Nor could Plaintiffs allege deceptive conduct, according to Invitation Homes, because "the late fees were disclosed in the lease." Doc. 58, Def.'s Mot., 32 (citing *People ex rel. Fahner v. Hedrich*, 438 N.E.2d 924, 929 (Ill. App. Ct. 1982)). Further, Invitation Homes contends that Plaintiffs fail to allege any fraudulent conduct. *Id.*

Plaintiffs respond that Illinois courts have "found that unconscionable fees charged against tenants that were paid 'because the tenants were in a position in which they had no reasonable alternative but to pay and to agree to pay' fall within the ambit of the IFCA." Doc. 59, Pls.' Resp., 20 (citing *Hedrich*, 438 N.E.2d at 929). Further, Plaintiffs argue that Chicago's municipal code establishes a ceiling for late fees, not that any fees at or below this amount is per se lawful. *Id.*

Plaintiffs' claim falls short because the late-fee provision is not unfair. "[C]harging an unconscionably high price generally is insufficient to establish a claim for unfairness under the Consumer Fraud Act." *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996) (citing *People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1386 (Ill. 1991)). The Court finds the *Saunders* case and its discussion of the *Hedrich* case relevant to this issue. In *Saunders*, a bank charged the plaintiff a $200 fee for an overdraft of approximately $4.61, which she alleged was "unconscionably high." *Id.* at 606, 608. The court found that alleging such a fee was unconscionable did not sufficiently plead a ICFA claim. *Id.* at 608–09. Further, the court distinguished its case from *Hedrich* by finding "a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness" that pervaded the *Hedrich* case. *Id.* at 608. In *Hedrich*, the court found a trailer park owner's charging of an unwritten or previously agreed to $1,500 transfer fee to keep a trailer on the trailer park lot after being sold was unfair. *Hedrich*, 438 N.E.2d at 929.

-26-

Specifically, the court found "(1) charging an unconscionable high price for no services offends public policy; (2) the defendant's conduct was oppressive because the residents had no reasonable alternative but to pay the fee; and (3) the defendant's acts injured consumers." *Saunders*, 662 N.E.2d at 608 (citing *Hedrich*, 438 N.E.2d at 929).

For the same reasons as the *Saunders* court, this court finds the instant case distinguishable from the *Hedrich* case. However, the Court acknowledges that a fee charged by a landlord is potentially more coercive than a fee charged by a bank. *Compare Hedrich*, 438 N.E.2d at 929, *with Saunders*, 662 N.E.2d at 608. But much like the plaintiff in *Saunders*, Plaintiffs "not only had control over whether [they] would be assessed [a late] fee, but w[ere] free to select another [landlord]." *Id.* at 608. Just like the bank in Saunders, Invitation Homes "provided [Plaintiffs] with all of the information necessary to make a meaningful choice in selecting [landlords]." *Id.* at 609. Thus, the claim "fails to rise to the level of unfairness necessary to support a claim under the Consumer Fraud Act." *Id.* Just like the *Saunders* court, the Court **DISMISSES** this claim **WITH PREJUDICE**. *See id.* at 606.

6. North Carolina Unfair and Deceptive Trade Practices Act—N.C. Gen. Stat. § 75-1.1—Count 14

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (alteration and internal quotation marks omitted). "A practice is unfair [for purposes of establishing liability pursuant to N.C. Gen. Stat. § 75–1.1] when it offends established public policy as well as when the practice is immoral, unethical,

oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). "[W]hether an act or practice is an unfair or deceptive practice that violates [N.C. Gen. Stat.] § 75–1.1 is a question of law for the court." *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (2000).

Invitation Homes argues that its late fee complies with North Carolina law, which permits late fees of up to five percent of the monthly rent. Doc. 58, Def.'s Mot., 32–33; *see* N.C. Gen. Stat. Ann. § 42-26 ("[A] landlord may charge a late fee not to exceed fifteen dollars ($15.00) or five percent (5%) of the monthly rent."). Further, the Amended Complaint omits material facts such as when Invitation Homes allegedly charged too high of a late fee, which could be outside of the limitations period or prior to Invitation Homes owning the property. Doc. 60, Def.'s Reply, 8.

Plaintiffs argue that Invitation Homes's argument is improper for Rule 12(b)(6) motion because its argument would require the Court to make a factual determination against Plaintiffs. Doc. 59, Pls.' Resp., 20–21. Plaintiffs further contend that the Amended Complaint contains allegations of Invitation Homes violating the statute by charging too high of a late fee. *Id.* at 21.

Plaintiffs sufficiently pleaded their North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") claim. Plaintiffs allege that Invitation Homes unfairly charges too-high late fees that affect the rental market in North Carolina and these late fees injured Plaintiffs. Doc. 57, Am. Compl., ¶¶ 142–44, 148. These allegations sufficiently plead the three elements for a NCUDTPA claim. Additionally, the determination of whether Invitation Homes late fees violated N.C. Gen. Stat. § 42-26 would require the Court to make an inference against the Plaintiffs and such an inference is improper at this stage of the case. *See Berman v. Pa. Higher Educ. Assistance Agency*, 2022 WL 767530, at *5 (M.D. N.C. March 14, 2022) (finding determination of an unfair or deceptive

trade practice premature at the motion-to-dismiss stage); *Manor v. Freedom Mortg. Corp.*, 2022 WL 874181, at *2 (4th Cir. March 24, 2022) (affirming district court's granting of summary judgment on a NCUDTPA claim where the district court determined defendant's actions were not unfair or deceptive as a matter of law). Therefore, the Court **DENIES** Invitation Homes's motion for this claim.

    <u>7.</u>    <u>Texas Deceptive Trade Practices - Consumer Protection Act—Tex. Bus. & Com. Code § 17.41—Count 21</u>

The Texas Deceptive Trade Practices & Consumer Protection Act ("TDTPA") "protects a consumer from 'false, misleading, or deceptive acts or practices,' from an 'unconscionable action or course of action by any person,' and from the breach of an implied or express warranty in the conduct of any trade or commerce that is the producing cause of actual damage." *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (quoting *Miller v. Kim Tindall & Assocs., LLC*, 633 S.W.3d 102, 104–05 (Tex. App.—El Paso 2021, pet. denied)). The elements of a TDTPA claim are: "(1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts . . . or engaged in an unconscionable action or course of action; and (3) the [Act's] laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury." *Id.* (alteration in original) (quoting *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App. 2012)). Plaintiffs plead their claim pursuant to § 17.46(b)(12), which proscribes "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Doc. 57, Am. Compl., ¶ 190; *see* Tex. Bus. & Com. Code Ann. § 17.46(b)(12).

Invitation Homes argues that Plaintiffs fail to plead "any false representations about the parties' lease agreement or the late fee provision" or with the specificity required. Doc. 58, Mot., 33.

Further, Invitation Homes's late fee is below the statutorily authorized amount in Texas. *Id.* at 33–34 (citing Tex. Prop. Code. Ann. § 92.019).

Plaintiffs respond that the statute cited by Invitation Homes became effective on September 1, 2019, and "appears not to be retroactive" to any late fees charged before this date. Doc. 59, Pls.' Resp., 21. Further, Plaintiffs contend that § 92.019 "create[s] substantial demands on landlords" by requiring evidence of analysis or estimation for the late fee. *Id.* at 21 n.11 (first citing *Brown v. Mid-Am. Apartments, LP*, 348 F. Supp. 3d 594, 601 (W.D. Tex. 2018); and then citing *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 348 F. Supp. 3d 604, 612 (W.D. Tex. 2018)). Plaintiffs also contend that they sufficiently pleaded the elements of their claim, which "is sufficient at this stage to survive a motion to dismiss." *Id.* at 22.

First, the Fifth Circuit reversed the class certifications for both cases cited by Plaintiffs by rejecting Plaintiffs' interpretation of the pre-2019 statute. *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 20 F.4th 171, 178 (5th Cir. 2021). In *Cleven*, the Fifth Circuit analyzed the question of whether § 92.019 "require[d] the landlord to engage in a process to arrive at a reasonable late fee." *Id.* at 177. The court held that § 92.019 "just requires that the late fee agreed upon be a reasonable estimate of damages that are incapable of precise calculation." *Id.* The statute only requires "a *reasonable estimate* at the time of contracting of damages that are incapable of precise calculation" and not "that a landlord must re-estimate damages each time a tenant's rent is tardy before imposing a late fee." *Id.* at 178 (emphasis added).

With this interpretation of the pre-2019 statute in mind, the Court finds insufficient evidence to summarily say Invitation Homes charged a reasonable late fee, warranting dismissal of Plaintiffs' claim. While § 92.019 authorizes a late fee of 12% of the monthly rent and Plaintiffs allege that

Invitation Homes charged a $95 late fee multiple times and a $250 legal fee on one occasion, Doc. 57, Am. Compl., ¶ 35, the Court lacks any information to place these amounts in context to determine whether Invitation Homes reasonably estimated the damages for the late payment of rent. *See Cleven*, 20 F.4th at 177.

However, the current statute with an effective date of September 1, 2019, eliminated the "reasonable estimate" language and summarily states that "a late fee is considered reasonable if the late fee is not more than 12 percent of the amount of rent for the rental period under the lease." 2019 Tex. Sess. Law Serv. Ch. 629. With the information before the Court, Invitation Homes's late fees after September 1, 2019, were *per se* reasonable and Plaintiffs cannot state a claim for these late fees.[6]

Turning to the elements of the claim, the Court finds Plaintiffs sufficiently pleaded the claim with enough particularity to satisfy Rule 9(b). *See Sanchez v. Allstate Vehicle & Prop. Ins. Co.*, 2021 WL 5636695, at *4 (S.D. Tex. Dec. 1, 2021) (stating that TDTPA claims sounding in fraud must be pled with Rule 9(b)'s requirements). Plaintiff alleges that "[Invitation Homes's] representation that the late fees were lawful is a violation of the [TDTPA]." Doc. 57, Am. Compl., ¶ 190. This allegation sufficiently alleges "that [the lease] agreement confers or involves rights, remedies, or obligations which it does not have or involve, or *which are prohibited by law*." Tex. Bus. & Com. Code Ann. § 17.46(b)(12) (emphasis added). Plaintiffs further plead the other elements: that they are consumers, that Invitation Homes presented false information about the legal validity of the lease

---

[6] Plaintiffs only pleaded late fees charged between December 6, 2016, and May 6, 2019. Doc. 57, Am. Compl., ¶ 35. However, as noted in Section III(A), Plaintiffs have not provided a class period for each of the subclasses.

agreements, and this caused Plaintiffs' injury. The Court **DENIES** Invitation Homes's motion for this claim.

8.    Washington Consumer Protection Act—Rev. Code Wash. § 19.86.010—Count 24

Invitation Homes argues that Plaintiffs fail to "do . . . more than regurgitate a few of [the claim's] elements." Doc. 58, Def.'s Mot., 34. Further, according to Invitation Homes, the Washington Consumer Protection Act ("WCPA") "does not . . . apply to landlord-tenant disputes." *Id.* (citing *State v. Schwab*, 693 P.2d 108 (Wash. 1985)).

Plaintiffs contend that they sufficiently pleaded the elements to state a claim under the WCPA. Doc. 59, Pls.' Resp., 23. They also argue that Invitation Homes "has not demonstrated that Plaintiffs' allegations are otherwise covered by the Residential Landlord-Tenant Act so as to exempt them from the ambit of the CPA." *Id.* (citing *Schwab*, 693 P.2d 108).

The Court agrees with Invitation Homes. In *Schwab*, the Supreme Court of Washington held that the legislature intended the WCPA to not cover residential landlord-tenant problems "either directly through that act or indirectly through means of the Residential Landlord-Tenant Act [("RLTA")]of 1973." 693 P.2d at 113–14. The court examined the activities listed within the WCPA by the legislature and the rejection of an amendment to bring the RLTA within the ambit of the WCPA. *Id.* at 110–11, 113. Because of this legislative history, the Court concluded that the WCPA did not cover residential landlord-tenant problems. *Id.* at 113–14.

Subsequent Washington courts have expounded upon the *Schwab* court's holding when determining whether various residential landlord-tenant disputes fall within the ambit of the WCPA. In making this determination, courts examine whether the actions fall "outside the comprehensive ambit of the RLTA." *Lewis v. Zanco*, 483 P.3d 836, 838 (Wash. Ct. App. 2021); *Jenkins v. Puckett*

*Redford PLLC*, 2020 WL 4517933, at *6 (W.D. Wash. Aug. 3, 2020). *See generally Heritage Hills, Ltd. v. Deacon*, 551 N.E.2d 125, 128 (Ohio 1990) (citing to *Schwab* when holding that the Ohio Consumer Sales Practices Act does not apply to unconscionable clauses in a residential lease).

The charging of a late fee falls within the ambit of the RLTA. The RLTA specifically states that "the landlord may charge late fees commencing from the first day after the due date until paid." Wash. Rev. Code Ann. § 59.18.170. Thus, any dispute about Invitation Homes's late fee falls within the ambit of the RLTA and outside of the ambit of the WCPA. Accordingly, the Court **DISMISSES** this claim **WITH PREJUDICE**.

### F.   *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Plaintiffs' allegations, the Court deems it appropriate to provide them one chance to amend their pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **THIRTY (30)** days of the date of this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Invitation Homes's Motion to Dismiss (Doc. 58). Specifically, the Court **DISMISSES WITHOUT PREJUDICE** the class allegations and counts 2, 3, 5, 7, 10, 13, 16, 18, 20, 23, and 26. The Court **DISMISSES WITH PREJUDICE** counts 1, 11, 12, and 24. Further, the Court **DENIES** the Motion for counts 4, 6, 8, 9, 14, 15, 17, 19, 21, 22, and 25. Within **THIRTY (30)** days of the date of this Order, Plaintiffs may file a second amended complaint as permitted in Section III (D), *supra*.

From the date of Plaintiffs' filing, Invitation Homes has twenty-one (21) days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 12.


      SO ORDERED.

      SIGNED: May 31, 2022.

                           _____
                           JANE J. BOYLE
                           UNITED STATES DISTRICT JUDGE