## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| FRANCINE McCUMBER, ET AL. | Case No. 3:21-cv-02194-B |
| Plaintiffs, | **Judge Jane J. Boyle** |
| v. | |
| INVITATION HOMES, INC., a Maryland corporation | |
| Defendant. | |

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND BRIEF IN SUPPORT THEREOF

TO THE COURT, ALL PARTIES, THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Francine McCumber, Erin Dolce (f/k/a Erin Bird and Erin Bryd), Melissa Lynch, La Shay Harvey, Maryah Marciniak, Brian Majka, Chad Whetman, Tracy White, Rachel Osborn, Teresa Kerr (f/k/a Tereasa Maria Moore), and Jose Rivera (collectively "Plaintiffs") will and hereby do move this Court for an Order preliminarily approving the settlement agreement reached with Defendant Invitation Homes, Inc.

This motion is based on the attached Memorandum of Points and Authorities, the supporting Declaration of Alex Tomasevic and its attached exhibits, and all other pleadings and papers on file in this action, and upon such other matters or arguments as may be presented to the Court at the time of the hearing.

Respectfully submitted,
Dated: May 3, 2023

**NICHOLAS & TOMASEVIC LLP**

*/s/ Alex Tomasevic*
cnicholas@nicholaslaw.org
Alex Tomasevic (*pro hac vice*)
atomasevic@nicholaslaw.org
225 Broadway, 19th Floor

i

San Diego, CA 92101
Telephone: +1 619 325 0492
Fax: +1 619 325 0496


Richard A. Smith
Texas Bar No. 24027990
richard@rsmithpc.com
**PALMER LEHMAN SANDBERG PLC**
Campbell Centre I
8350 N. Central Expressway, Suite 1111
Dallas, TX 75206
Telephone: + 1 214 2426484

**ATTORNEYS FOR PLAINTIFFS FRANCINE MCCUMBER, ET AL.**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...................................................................................................3

      A.    The Allegations ............................................................................... 3

      B.    Procedural History ......................................................................... 4

      C.    Counsel's Investigation and Discovery ............................................. 5

      D.    The Lengthy and Multi-Phased Settlement Discussions ................... 6

III.    THE PROPOSED SETTLEMENT ....................................................................7

      A.    The Settlement Classes ................................................................ 7

      B.    $7.5 Million Paid by Defendant on a Non-Reversionary
          Basis with No Claim Requirements ................................................ 9

      C.    The Notice Plan ......................................................................... 10

             1.    Direct Notice to Settlement Class Members ......................... 10

             2.    Settlement Website and Toll-Free Number ........................... 10

             3.    Opt-Out and Objection Procedures ..................................... 11

      D.    Release ...................................................................................... 11

IV.    ARGUMENT ......................................................................................................11

      A.    Overview of the Class Action Settlement Approval Process ............ 11

      B.    The Proposed Settlement Meets the Standards for Preliminary
          Settlement Approval .................................................................... 12

             1.    The Settlement is the Product of Good Faith,
                  Arms'-Length Negotiations, and Is Informed
                  By Years of Intensive Litigation and Discovery ..................... 13

             2.    Plaintiffs and Class Counsel Have Zealously
                   Represented the Class ........................................................ 15

             3.    The Settlement Represents a Strong Result for
                   the Settlement Class, Particularly Given the
                   Risks, Complexities, and Likely Duration of
                   Ongoing Litigation ............................................................. 15

4. *The Request for Fees and Costs is Reasonable at this Stage* ..................................................... 17

5. *The Settlement Treats Class Members Equitably* ................................... 19

6. *The Recommendation of Experienced Counsel Also Favors Approval* ..................................................... 19

C. **The Court Should Provisionally Certify the Settlement Class** ..................... 20

1. *The Requirements of Rule 23(a) Are Satisfied* ..................................... 20

 a. **Numerosity (Rule 23(a)(1))** ..................................... 20

 b. **Commonality (Rule 23(a)(2))** ..................................... 20

 c. **Typicality (Rule 23(a)(3))** ..................................... 20

 d. **Adequacy (Rule 23(a)(4))** ..................................... 21

2. *The Requirements of Rule 23(b)(3) are Also Satisfied* ..................................... 22

D. **The Proposed Class Notice and Notice Plan Will Provide the Best Notice Practicable and Should be Approved** ..................................... 23

E. **Finally, The Court Should Schedule a Fairness Hearing and Related Dates** ..................................... 24

V. **CONCLUSION** ..................................... 24

iv

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)...................................................................................... 22

*Blum v. Stenson*,
 465 U.S. 886 (1984)...................................................................................... 17

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)...................................................................................... 17

*Boos v. AT & T, Inc.*,
 252 F.R.D. 319 (W.D. Tex. 2008) ................................................................. 22

*Butler v. Sears, Roebuck & Co.*,
 702 F.3d 359 (7th Cir. 2012) ........................................................................ 22

*Cleven v. Mid-Am. Apt. Communities, Inc.*,
 20 F.4th 171 (5th Cir. 2021) ......................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)...................................................................................... 23

*Feder v. Elec. Data Sys. Corp.*,
 429 F.3d 125 (5th Cir. 2005) ........................................................................ 21

*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
 511 P.2d 1197 (Cal. 1973) ............................................................................ 16

*Ibe v. Jones*,
 836 F.3d 516 (5th Cir. 2016) ........................................................................ 20

*In re Catfish Antitrust Litig.*,
 939 F. Supp. 493 (N.D. Miss. 1996)........................................................ 17, 18

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) ........................................................................ 13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................ 13

*James v. City of Dallas*,
 254 F.3d 551 (5th Cir. 2001) .................................................................... 20, 21

*Jones v. JGC Dallas LLC*,
 No. 3:11–CV–2743–O,
 2014 WL 7332551 (N.D. Tex. Nov. 12, 2014)............................................. 18

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) .................................................................... 12

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................... 12

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................ 13, 18, 19

*Serna v. Transp. Workers Union of Am.*,
   2014 WL 7721824 (N.D. Tex. Dec. 3, 2014) .................................... 20, 21

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) ................................................................... 21

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ................................................................... 21

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ..................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................ 22

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ........................................................... 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................ 20

*Welsh v. Navy Fed. Credit Union*,
   2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ...................................... 18

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) ................................................................... 20

**Statutes**

Cal. Civ. Code, § 1671(d) ............................................................................. 3

Tex. Prop. Code, § 92.019(a) ........................................................................ 8

Tex. Prop. Code, § 92.019(e) ...................................................................... 16

U.C.C., § 2-718(1) ......................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 .......................................................................... 11, 12, 13, 18, 20, 21, 22, 23, 24

**Treatises**

Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981) ....................................... 3, 21

## I.     INTRODUCTION

This Motion seeks preliminary approval of the parties' proposed $7,500,000 "late fees" class action settlement. This case challenges Defendant Invitation Homes, Inc., and its predecessors' (collectively "Defendant" or "INVH," unless otherwise clarified) charges to tenants in 11 states for late payment of rent.   In short, Plaintiffs – who come from each of the 11 represented states, including Texas – alleged that INVH's standard late fees in its form lease agreements amount to improper penalties under the consumer protection laws and/or common law of each of their states.  Defendant has vigorously opposed this matter, which was litigated heavily in three different actions in three different states for a total of about five years.

The settlement, if approved, would provide significant monetary relief for tenants, and would finally put an end to lengthy and hotly contested litigation.

The basic terms of the settlement provide for:

- A total, non-reversionary class settlement amount of $7,500,000 to be funded by Defendant (the "Total Settlement Amount"), with up to 25% of that amount (or up to $1,875,000) consisting of debt forgiveness to certain class members who have high active balances owing to INVH.

- The Gross Settlement Amount covers all alleged damages, attorneys' fees (up to 33.0% of the Gross Settlement Amount), litigation costs (up to $30,000), costs of settlement administration (currently budgeted at $175,000 or less), and typical representative enhancement awards to the named Plaintiffs for their efforts in filing the case against their landlord, sticking with the case for all this time, working closely with counsel, and helping to achieve these results ($5,000 each, or $55,000 total).

1

- An experienced and neutral Settlement Administrator, Angeion Group, will send out direct written notice to all class members via email or mail that will explain the settlement terms, will estimate what they will receive under the settlement, and give everyone the option to participate in the settlement, object to it, or opt out of it with no obligation. The Settlement Administrator will also establish a settlement website and toll-free telephone support.

An objective evaluation of the settlement confirms that the relief negotiated at arms-length is fair, reasonable, and valuable. The Parties negotiated the settlement only after one failed mediation, then another separate full day of mediation with the Honorable Jeff Kaplan (Ret.). And the settlement provides Class Members with valuable relief for their claims in terms of real money or debt relief, not coupons or illusory equitable relief. The relief also does not require the submission of a claim. Further, by settling now, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial, or of recovering a smaller amount than obtained through this settlement, possible appeals, etcetera.

Overall, the settlement is an excellent result considering all the relevant circumstances. Accordingly, Plaintiffs seek approval of the proposed settlement as preliminarily fair, reasonable, and adequate and asks the Court to conditionally certify the Class and set dates for providing notice of settlement to the Class, requests for exclusion or objection, and the final approval and fee hearings.

## II.      BACKGROUND[1]

### A.      The Allegations

Defendant[2] operates in multiple states and rents out single-family residences. When tenants pay rent late (i.e., if not within a few days after the first of the month), Defendant assesses standard late charges under the lease – predominantly either a $95 flat fee, or 10% of monthly rent depending on the lease version. Plaintiffs allege that these late fees are excessive and amount to illegal penalties under the statutory and/or common laws of their state.

More specifically, Plaintiffs allege that INVH's standard fees are all illegal for the same reason. In all the relevant states, while landlords may institute appropriate "liquidated damages" provisions under certain circumstances, including to compensate the late payment of rent, they generally may only do so if: (a) it would be extremely difficult or infeasible to calculate actual damages from the late payment; *and* (b) the liquidated damages are a reasonable amount in light of the anticipated or actual harm. *See, e.g.*, Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981) (the "Restatement"); Cal. Civ. Code § 1671(d); U.C.C. § 2-718(1). Most states, including all the states represented in this case, have adopted the Restatement into their common law or otherwise codified a statute similarly differentiating lawful liquidated damages provisions from unlawful late fee penalties.

---

[1] Unless otherwise indicated, the factual support for these unopposed averments can be found in the accompanying Declaration of Class Counsel Alex Tomasevic.

[2] INVH was once privately held by New York's Blackstone Group. Blackstone took Invitation Homes public in February 2017. By that time, another large home rental firm—Waypoint Homes—had already merged with another—Colony Starwood—in 2016, to create "Starwood Waypoint Homes." Invitation Homes then merged with the new Starwood Waypoint Homes entity in November 2018 to create the current defendant: Invitation Homes, Inc. (NYSE: INVH).

Plaintiffs generally alleged that INVH's fees bare no reasonable relation to the alleged "damage" suffered by INVH, if any, arising from waiting a bit of extra for the rent payment. Most of the time, Plaintiffs posited, there is little or no damage to INVH from any late payments because the amounts due are usually paid within a couple of days of the due date. Moreover, INVH has allegedly never attempted to conduct any analysis or "reasonable endeavor" to set the fee, often just picking arbitrary amounts to charge. At issue here are Defendant's late rent charges to tenants in Arizona, California, Colorado, Florida, Georgia, Illinois, Nevada, North Carolina, Tennessee, Texas, and Washington.

### B.   Procedural History

This case was originally filed in the Northern District of California by plaintiff Jose Rivera, only, on May 25, 2018. Mr. Rivera resided in one of INVH's California rental homes. In August of 2018, the remaining Plaintiffs joined Mr. Rivera in his California action and, in general, asserted claims under each of their respective states' laws. Eventually, however, the Northern District of California dismissed the claims of the non-resident tenants for lack of specific jurisdiction over their out of state claims. Those out-of-state plaintiffs (i.e., all of them except for Mr. Rivera) then re-filed, together, in federal district court in Maryland – Defendant's state of incorporation. That Maryland action, though, was transferred, in September of 2021, here to Dallas and this Court. Dallas is where INVH's headquarters sit. *See* Dkt. No. 31.

Mr. Rivera continued to conduct discovery and litigate his case in California, eventually filing his Motion for Class Certification. Defendant opposed and Plaintiff replied. The Northern District of California ruled on the fully briefed motion, however, by dismissing Mr. Rivera's claims on jurisdictional grounds and never ruling on the Rule 23 factors. Mr. Rivera eventually re-joined his original co-plaintiffs in this Court. *See* Dkt. No. 93 (Amended Complaint adds Mr.

Rivera).  Class Counsel Nicholas & Tomasevic has represented all plaintiffs in all cases at all times.

Defendant denies all material allegations and has always vigorously defended all actions against it brought by these plaintiffs.  For example, Mr. Rivera's California action included multiple motions to dismiss.  Here, after Plaintiffs amended their complaint again in January of 2022, Defendant filed a Motion to Dismiss specifically targeting each claim from each state.  Dkt. No. 58.  The Court granted Defendant's motion in part and denied it in part.  Dkt. No. 65.  Plaintiff thereafter filed a Second Amended Complaint, Dkt. No. 66.  Defendant then timely moved to dismiss that Amended Complaint.  Dkt. No. 69.  Defendant's new motion to dismiss was fully briefed when the parties went to their most recent mediation and reached a settlement.

### C.      Counsel's Investigation and Discovery

Prior to filing the suit, and continuing through the course of the litigation, Class Counsel conducted an extensive investigation into the factual and legal issues raised in this case. These investigative efforts included reviewing voluminous federal filings by Defendant, including SEC filings, as well as filings in states Defendant operated in or owned rental properties.  Class Counsel, of course, also spent hours upon hours talking with the 11 named plaintiffs themselves and reviewing and analyzing their circumstances and documents.  Counsel also searched for, identified, and interviewed numerous additional current and former tenants of Defendant, nationwide, speaking with them over the years about their experiences and compiling their supporting data and documents. As might be expected when dealing with 11 named plaintiffs to start, their referrals and contacts ballooned into contacts with many additional witnesses whose experiences were catalogued and fact-checked, and their documents gathered and analyzed.

Class Counsel also thoroughly researched and analyzed the legal issues regarding all claims which, naturally, involved the analysis of 11 states' laws, including each of their consumer protection statutes and their decisional law, and Defendant's defenses and potential defenses.

Moreover, the parties have conducted extensive discovery, making them very well-informed about the relative strengths and weaknesses of their respective positions, and providing them with information needed to negotiate the proposed Settlement. Plaintiffs served and Defendant responded to multiple sets of written discovery requests, including Interrogatories and Document Requests. Eventually each named Plaintiff served their own discovery requests and Defendant responded. Also, and after the entry of a protective order, Defendant produced and Class Counsel reviewed about 10,000 additional pages of printable documents, but more material in the form of electronic data. All told, Class Counsel received and analyzed data concerning over 133,200 tenancies and 909,000 potentially relevant charges. Plaintiffs also deposed Defendant's Portfolio Director. The parties were planning additional discovery and depositions when they decided to try to a second mediation.

### D. The Lengthy and Multi-Phased Settlement Discussions

The parties attended their first mediation in January of 2020. The case did not settle that day, but the parties continued to negotiate on a class-wide basis for a while thereafter with the assistance of the mediator, including by exchanging additional post-mediation settlement briefs. While that mediation and ensuing negotiations carried the benefit of forcing the parties to prepare and have serious good-faith discussions about the strengths and weaknesses of their case, the talks eventually stalled, and the case did not settle. The parties continued to litigate.

After much additional litigation and discovery, the parties agreed to attend mediation again in August of 2022 before the Honorable Jeff Kaplan (Ret.). The parties spent a whole day

negotiating with Judge Kaplan's assistance.   At the end of the day, Judge Kaplan made a Mediator's Proposal, which all parties accepted subject to some confirmatory details and data exchanges.   The parties later arrived at an agreement about fees and costs.   Defendant produced additional information and class data and the parties eventually finalized their written class settlement agreement which is attached to the accompanying Declaration of Alex Tomasevic as **Exhibit 1** (the "Settlement Agreement").

## III.   THE PROPOSED SETTLEMENT

The following is a summary of the parties' Settlement Agreement:

### A.   The Settlement Classes

The proposed settlement classes are as follows:

1.   <u>Arizona</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2017, and the Preliminary Approval Date;

2.   <u>California</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2018, and the Preliminary Approval Date;

3.   <u>Colorado</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2018, and the Preliminary Approval Date;

4.   <u>Florida</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2017, and the Preliminary Approval Date;

7

5.      <u>Georgia</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2015, and the Preliminary Approval Date;

6.      <u>Illinois</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2011, and the Preliminary Approval Date;

7.      <u>Nevada</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2017, and the Preliminary Approval Date;

8.      <u>North Carolina</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2017, and the Preliminary Approval Date;

9.      <u>Tennessee</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2015, and the Preliminary Approval Date;

10.     <u>Texas</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2019 and August 31, 2019;[3] and

---

[3] The reason for this Texas cutoff date is that, effective September 1, 2019, the Texas Legislature amended its late fee statute and it now states that a late fee is considered per se "reasonable" if the fee is not more than 10 percent of the amount of rent. Tex. Prop. Code § 92.019(a). All of Defendant's fees were 10% or less. As a result, Plaintiffs' claims were dismissed by this Court insofar as they alleged improper late fees in Texas charged after August 21, 2019.

11. <u>Washington</u> tenants who were charged penalties or fees for paying rent that Defendant deemed as late or deficient between January 14, 2018, and the Preliminary Approval Date.

Excluded from the Settlement are: (a) Defendant and its officers, directors, and employees; (b) any person who files a valid and timely Request for Exclusion; and (c) judicial officers and their immediate family members and associated court staff assigned to the case.

## B.     $7.5 Million Paid by Defendant on a Non-Reversionary Basis with No Claim Requirements

Per the settlement, defendant will fund a Total Settlement Amount of $7,500,000, of which up to 25% (or up to $1,875,000) will consist of debt relief and the rest shall be cash. Settlement Agreement at § 2.33.

The Total Settlement Amount will also be used to cover Class Counsel's Costs of up to $30,000, Class Counsels Fees of up to 33.0% ($2,475,000), class representative service awards of up to $5,000 per representative (up to $55,000 total), and Settlement Administration Costs currently estimated to be $175,000 or less.

Regarding the individual payouts, Participating Class Members will fit into one of two buckets: a debt relief bucket or a net payout bucket. Regarding the debt relief component, many of the class members are, e.g., former tenants who vacated still owing considerable money to Defendant for things like unpaid rent or damage to their rental. The "Debt Relief" under the Settlement Agreement, in turn, applies to verifiable and active balances owed by Class Members whose outstanding balances with Defendant were more than $1,000 as of September 30, 2022 and who do not cure their balances before Final Approval. *Id.* at §§ 2.10, 4.2.4.1. Those debtors will receive (and only receive under the Settlement) an equal credit against their debt, with the sum total of all debt relief credits not to exceed the total earmarked for debt relief of $1,875,000.

All the other (non-debtor) class members on the other hand – those in the other bucket who do not opt out - will receive a flat and equal distribution of all remaining funds, i.e., an equal share of the Net Distribution Fund. *Id.* at § 4.2.4.1.

C.     **The Notice Plan**

The parties proposed Settlement Notice Procedures, and procedures for opting out of or objecting to the settlement (sometimes collectively referred to as the "Notice Plan") are set forth in Sections VII and VIII of the Settlement Agreement, and will consist of the following:

*1.     Direct Notice to Settlement Class Members*

Written Class Notice will be sent directly to Class Members. After preliminary approval, Defendant will provide updated class member contact information to the Administrator. Settlement Agreement at § 7.1. Defendant has email addresses for most class members. As such, within 14 days of receipt of the updated class member contact information, the Administrator will email those class members with full copies of the Class Notice. *Id.* at § 7.2. For those class members where email addresses are lacking, or where emails bounce back undelivered, the Administrator will mail the notice via First Class Mail after doing a search for updated addresses through the National Change of Address Database. The Administrator will attempt to remail notice for any returned mailed notices. *Id.* at §§ 7.2, 7.3.

*2.     Settlement Website and Toll-Free Number*

The Settlement Administrator will also establish a dedicated, case-specific settlement website where Settlement Class Members can obtain further information about the case and the Settlement. The settlement website will be readable on mobile devices and include copies of key case documents, including but not limited to the Settlement Agreement and the operative

10

Complaint. The Settlement Administrator will also establish a toll-free telephone number that Class members can call for more case information.

### 3.    Opt-Out and Objection Procedures

Any person within the class definitions above may request to be excluded from the settlement by sending a written request stating their desire to be excluded, to the Administrator, postmarked or delivered by the deadline proscribed by the Class Notice. Settlement Agreement at § 8.1.  Any Class Member who does not submit a timely and valid exclusion request may submit a written objection to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for Class Representative service awards. To be considered, an objection must be postmarked by the deadline stated in the Class Notice and must include the information prescribed by the Class Notice. Settlement Agreement at § 8.2.

### D.    Release

In exchange for the consideration provided under the Settlement Agreement, Participating Class Members will release INVH and affiliated companies and agents from any claims that were brought in this matter or based on the same factual predicate as this action.  Settlement Agreement at § 2.25.  The named representatives, including in light of their class representative awards, will provide broader "general" releases of all claims.  *Id.* at § 5.2.

## IV.    ARGUMENT

### A.    Overview of the Class Action Settlement Approval Process

Pursuant to Rule 23(e), a class action settlement must be approved by the Court before it can become effective. The process for Court approval is comprised of three principal steps:

(1)     Preliminary approval of the proposed settlement and direction to disseminate notice to the class, after submission to the Court of a written motion for preliminary approval;

(2)     Dissemination of notice to the class; and

(3)     A final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

By this Motion, Plaintiffs respectfully ask the Court to take the first step in the approval process and enter an order preliminarily approving the Settlement and directing class notice, pursuant to the parties' proposed Notice plan, under Rule 23(e)(1).

**B.     The Proposed Settlement Meets the Standards for Preliminary Settlement Approval**

The decision to grant preliminary approval of a class settlement is within the District Court's sound discretion. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004). In evaluating a motion for preliminary settlement approval, the court conducts a preliminary assessment of the factors that will be evaluated at the final settlement approval stage. *See* Fed. R. Civ. P. 23(e)(1).

The touchstone for the class settlement approval analysis is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Fifth Circuit has adopted six factors—the "*Reed* factors"—for courts to use in determining whether a settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *In re*

*Deepwater Horizon*, 739 F.3d 790, 820 (5th Cir. 2014). Additionally, Rule 23(e)(2) establishes factors for the Court's consideration which overlap considerably with the *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2) (court must consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other).

In applying and weighing these factors, the Court should consider the strong public policy in favor of settlement. *In re Deepwater Horizon*, 739 F.3d at 807 (noting an "overriding public interest in favor of settlement that we have recognized [p]articularly in class action suits"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *17 (N.D. Tex. Nov. 8, 2005) (recognizing the "public interest in favor of settlement of class action lawsuits"). As discussed below, the proposed Settlement here is fair, reasonable, and adequate under the circumstances of this case and readily satisfies all applicable standards for preliminary settlement approval.

### 1. The Settlement is the Product of Good Faith, Arms'-Length Negotiations, and Is Informed By Years of Intensive Litigation and Discovery

There is a strong presumption of fairness when a proposed class action settlement is reached through arm's-length negotiations between experienced counsel, following "meaningful discovery." *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012). Here, the Settlement presented for the Court's consideration is the product of hard-fought, arms-length negotiations between the parties and their experienced and well-informed counsel. The parties participated in a long series of formal mediation sessions

including, finally, with experienced and well-respected mediator—Hon. Jeff Kalplan (Ret.), former long-time Magistrate in the Northern District and former State Appellate Court Justice. With Judge Kaplan's assistance, the parties were ultimately able to reach an agreement by accepting Judge Kaplan's Mediator's Proposal at the end of a lengthy day of negotiations.

And during the past several weeks, the parties have been working diligently to finalize the settlement papers. Throughout these negotiations, the parties were represented by counsel with extensive experience in the prosecution, defense and settlement of class actions and other complex matters, including landlord-tenant class actions.

After the parties reached an agreement in principle on class relief, the parties then negotiated at arms-length regarding attorneys' fees and expenses, subject to Court approval. Moreover, as discussed above, the Settlement here is informed by counsels' substantial investigation and discovery regarding the legal and factual issues in the litigation. Before filing the case, Class Counsel conducted an extensive investigation into the factual underpinnings of the claim and the applicable law of all 11 states at issue. Class Counsel engaged in ongoing factual and legal investigation throughout the course of the litigation, including identifying and speaking to numerous potential fact and expert witnesses and speaking with class members across the country about their experiences. Class Counsel have also conducted extensive formal discovery in this case, including the serving of over a dozen sets of written discovery, the receipt and review of thousands of pages of printable material, and the receipt and analysis of class data.   The parties sometimes fought over the proper scope of discovery.  Further, there has been significant motions practice in this case, including multiple motions to dismiss and, in the California action, a fully briefed motion for class certification.  In negotiating the Settlement, the parties and their counsel were significantly informed by this work and the Court's rulings.

14

### 2. *Plaintiffs and Class Counsel Have Zealously Represented the Class*

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for five years. As detailed above, Class Counsel have thoroughly investigated the factual and legal issues involved, conducted extensive discovery, and engaged in significant motion practice in furtherance of prosecuting the claim here. Likewise, Plaintiffs themselves were actively engaged—each provided pertinent information and documents and communicated regularly with Class Counsel up to and including evaluating and approving the proposed Settlement.

### 3. *The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks, Complexities, and Likely Duration of Ongoing Litigation*

The Settlement provides substantial monetary relief—$7.5 million—that is well-tailored to the alleged harm. Plaintiffs in this case allege that INVH charged excessive "late" fees that were not proper liquidated damages, but rather, illegal penalties. The settlement addresses the alleged harm by paying money meant to be, in essence, a partial refund of these fees. The $7.5 million Total Settlement Amount—which was reached pursuant to a Mediator's Proposal presented by Judge Kaplan following extensive mediation (the parties' second) —represents a substantial portion of what realistically could have been achieved in this case, even assuming Plaintiffs were able to overcome the various remaining hurdles to certification and other milestones, successfully try this case to judgment, and hold onto that judgment through appeals.

Of course, Defendant vehemently denied that its fees were in any way unreasonable or improper. Defendant had evidence that its fees were reasonable in relation to its actual damages and set fairly in light of the fact that actual damages are difficult to quantify precisely under the circumstances. *Cf. Cleven v. Mid-Am. Apt. Communities, Inc.*, 20 F.4th 171, 177 (5th Cir. 2021)

15

(a late fee need only be "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent.").

Moreover, even if successful on the core question of liability, calculating the potential net class damages in this case with precision is very difficult (Defendant would argue impossible). Even if Plaintiffs succeeded in obtaining a ruling that all fees were excessive or improper, that would have been just the start of the analysis, not the end.   That is because even if Defendant is not entitled to the standard late charge as a *liquidated* damage, it would nonetheless be entitled to recover its *actual* damages as a potential setoff to any class member recovery here. *See, e.g.,* Tex. Prop. Code § 92.019(e); *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 511 P.2d 1197, 1203 (Cal. 1973) (Even if the charge is found to be void, the consumer does not "escape[] unscathed. He remains liable for the actual damages resulting from his default.").

Here, Defendants collected about $84 million in late fees in all the relevant jurisdictions over the relevant period as of mediation but had substantial evidence that they were entitled to a setoff of over $65 million for late or unpaid rent and property damage, leaving potentially only $19 million <u>assuming</u> Plaintiffs could prove that *every* late fee collected was unreasonable *every* time.

And, of course, INVH had defenses to class certification in the first instance.  If Plaintiffs failed to certify a class, the practical result would not be $19 million, but rather, quite possibly, if not likely, no relief at all for the class.  Thus, a pre-certification recovery of about 39.5% of estimated net damages is a strong result for Participating Class Members, particularly in light of the significant risks and challenges, and the substantial complexity, of ongoing litigation.

While Plaintiffs absolutely believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Class would face if the litigation

were to continue. The proposed Settlement provides considerable, appropriately tailored relief while allowing Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

Moreover, the method for distributing the payments—direct payments via automatic account debt credits and mailed checks, without the need for Class Members to submit claims—further supports the reasonableness of the Settlement. Payments or credits will be issued for all class members, and all the $7.5 million will be spent in favor of the resolution without any possible reversion back to Defendant.

Finally, the settlement also provides another significant benefit that would not be available if the litigation were to continue—prompt relief. Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals.

### 4.    The Request for Fees and Costs is Reasonable at this Stage

In cases like this one where recovery is made on behalf of a class through the establishment of a common fund, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The zealous and effective efforts of Plaintiffs and Class Counsel here merit awards of attorneys' fees, expenses, and case contribution awards.

Our Fifth Circuit has held that district courts may employ the percentage method in calculating fees in common fund cases - as the parties have done here subject to Court approval. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). Indeed, the "Supreme Court has also noted that in a common fund case, application of a 'percentage fee' approach is the proper method in awarding attorneys' fees." *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)).

Plaintiffs request 33.0 % in attorneys' fees, which is consistent with awards made by courts in this Circuit under the percentage method. *See Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) (citing *Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)); *Jones v. JGC Dallas LLC*, No. 3:11–CV–2743–O, 2014 WL 7332551 at *6 (N.D. Tex. Nov. 12, 2014) (citing authorities and approving 30% fee award on $2.3 million recovery); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503 (N.D. Miss. 1996) (collecting cases). The Fifth Circuit has recognized that the percentage method is particularly suitable in the class action context because it allows for easy computation and aligns the interests of class counsel with those of class members. *See Union Asset Mgmt.*, 669 F.3d at 643; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859 (E.D. La. 2007) ("Recognizing the contingent risk of nonpayment in such cases, courts have found that class counsel ought to be compensated both for services rendered and for risk of loss or nonpayment assumed by carrying through with the case." (quotation marks omitted)).

Here, the terms of the proposed attorneys' fee award, at 33.0 %, are consistent with, if not slightly less than typical awards in similar cases. Additionally, the amount of any attorneys' fee award is intended to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. Thus, Class Counsel intend to seek an attorneys' fee award of up to 33.0% of the total Settlement Amount, in addition to also seeking reasonable litigation costs and expenses, in a separate proceeding. In compliance with Rule 23(h), Plaintiffs will file a motion and supporting memorandum of law seeking this relief with the Court (and will upload to the Settlement website) well in advance of the deadline for Settlement Class Members to file objections to the Settlement.

### 5. The Settlement Treats Class Members Equitably

The proposed Settlement does not grant preferential treatment to the Plaintiffs or to any segment of the Class. The settlement benefits will be distributed equally, i.e., nobody gets more cash or credit than anyone else.  This distribution model, arrived at only after pouring over the transaction data, also has the advantage of being most administratively efficient, thus keeping transaction costs reasonable.   Moreover, Class Representative Service Awards, such as those that will be requested for the three Plaintiffs here, are commonly awarded in class actions, are well-justified under the circumstances, and are appropriate in amount given the Plaintiffs' commitment and effort in the litigation over its several years.

### 6. The Recommendation of Experienced Counsel Also Favors Approval

"[W]here the parties have conducted an extensive investigation, engaged in significant fact- finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (citation and internal quotations omitted). Class Counsel in this case have extensive experience litigating and settling class actions and other complex matters, including landlord/tenant cases, have conducted extensive research and discovery in this case, and have conducted an extensive investigation into the factual and legal issues raised. Based on their experience and knowledge about this case, Class Counsel have weighed the benefits of the Settlement against the inherent risks, complexities, and expense of continued litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate. That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate further supports approving the Settlement.

### C.      The Court Should Provisionally Certify the Settlement Class

The Court should provisionally certify the proposed Class for settlement because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied. INVH does not oppose certification of the Class for settlement purposes only.

### 1.      *The Requirements of Rule 23(a) Are Satisfied*

#### a.      Numerosity (Rule 23(a)(1))

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no magic number for meeting this requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Serna v. Transp. Workers Union of Am.*, 2014 WL 7721824, *2 (N.D. Tex. Dec. 3, 2014). Numerosity is readily satisfied here. The Class, as defined, includes over 130,000 tenancies.

#### b.      Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires at least one common issue of fact or law "capable of class-wide resolution." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A single common question of law or fact is sufficient. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *Wal-Mart*, 564 U.S. at 350). This case raises multiple common questions, including what efforts INVH took, if any, to estimate its actual damages before deploying its standard late fees, whether those efforts were reasonable, and/or whether the fees settled upon in Defendant's form lease contracts bare any reasonable relation to INVH's actual damages felt from the late payment of rent.    Commonality is satisfied here.

#### c.      Typicality (Rule 23(a)(3))

Typicality, under Rule 23(a)(3), is satisfied if the representative plaintiffs' claims and those of the class arise out of the same course of conduct and share the same legal theory. *James*, 254

F.3d at 571; *Serna*, 2014 WL 7721824, at *4. Typicality does not require "complete identity of claims." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Here, Plaintiffs, like the other Class Members, had form leases with INVH with late fee provisions, and they paid INVH pursuant to those provisions. Plaintiffs' and other Class Members' claims arise from the same alleged course of conduct and are based on the same legal theory—that INVH's fee charges were not a proper or reasonable liquidated damage.   *See* Restatement (Second) of Contracts § 356(1).

### d.      Adequacy (Rule 23(a)(4))

Rule 23(a)(4) looks at: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Class Counsel here have extensive experience litigating and resolving class actions and other similar complex matters and are well qualified to represent the Class. Since filing this case, Class Counsel have vigorously litigated this action on behalf of the Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Class. Likewise, the Plaintiffs have demonstrated their commitment to the Class, including by actively participating in the case for years, regularly communicating with Class Counsel about the case, and reviewing and approving the proposed Settlement. Finally, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Class. Plaintiffs and the Settlement Class Members share an interest in obtaining relief from INVH for the alleged violations.

### 2.    *The Requirements of Rule 23(b)(3) are Also Satisfied*

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, Plaintiffs seek certification, for settlement purposes, under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).

Common questions predominate here. Not only do the Class Members' claims all arise under the basic legal principles and alleged conduct (the collection of standard late fees), but under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial.").

Moreover, class treatment is superior to other methods for the resolution of this case. Plaintiffs are not aware of any other actions against INVH regarding the issues raised in this case. Given the size of each Class Member's damages—which would be dwarfed by the expense of prosecuting a separate individual case—they would be unlikely to pursue individual claims. *See Boos v. AT & T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008), *modified* (Sept. 17, 2008). In all

events, they remain free to exclude themselves from the Class if they wish to do so. Moreover, it would be far more efficient for the Court and the parties to have a single resolution (as with the proposed Settlement here), rather than multiple separate cases about the same issues.

**D.      The Proposed Class Notice and Notice Plan Will Provide the Best Notice Practicable and Should be Approved**

Before a proposed class settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice Plan here (Settlement Agreement, §§ VII and VIII) meets all applicable standards. The Notice Plan includes direct notice to Class Members sent via email and/or first-class U.S. Mail, a dedicated settlement website where Settlement Class Members can obtain additional information about the Settlement and view key case documents, and a toll-free telephone number where Settlement Class Members can get additional information. Moreover, the proposed form of Notice (Settlement Agreement, Ex. A) informs Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all the information required by Rule 23(c)(2)(B). The Court should approve the proposed Notice Plan.

**E.      Finally, The Court Should Schedule a Fairness Hearing and Related Dates**

The next steps in the settlement approval process are to notify Class Members of the proposed Settlement, allow Class Members an opportunity to exclude themselves or file comments or objections, and hold a Fairness Hearing.

Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for INVH to provide the final Class Information to the Settlement Administrator | **[45 days after entry of Preliminary Approval Order]** |
| Deadline to Send Notice of Settlement | **[14 days after INVH provides the Class Information]** |
| Last day for: (a) Class Plaintiffs to file motion for final approval of the Settlement; and (b) Class Counsel to file their application for attorneys' fees, expenses and service awards | **[21 Days After Sending Notice of Settlement]** |
| Opt-Out Deadline | **[30 days before the Fairness Hearing]** |
| Objection Deadline | **[30 days before the Fairness Hearing]** |
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Class Counsel's application for attorneys' fees, expenses and service awards. | **[14 days before Fairness Hearing]** |
| Fairness Hearing | **[TBD]** |

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

(a)      grant preliminary approval of the Settlement;

(b)      provisionally certify for settlement purposes the Class, as defined in the Settlement Agreement, pursuant to Fed. R. Civ. P. 23(b)(3);

(c)      appoint each of the Plaintiffs as class representatives;

24

(d)     appoint Alex Tomasevic and Craig Nicholas of Nicholas & Tomasevic, LLP as

Class Counsel;

(e)     appoint Angeion Group as Settlement Administrator, and direct Angeion to carry

out the duties of the Settlement Administrator specified in the Settlement;

(f)     approve the proposed Notice Plan—including the form and content of the Class

Notice and the proposed method for distributing the Class Notice—and direct the

Parties and Settlement Administrator to implement the Notice Plan;

(g)     continue the stay all non-Settlement related proceedings in this litigation pending

final approval of the Settlement; and

(h)     set a Fairness Hearing and certain other dates, as proposed herein, in connection

with the final approval of the Settlement.

Respectfully submitted,
Dated: May 3, 2023                                  **NICHOLAS & TOMASEVIC LLP**

                                                    */s/ Alex Tomasevic*
                                                    Craig Nicholas (*pro hac vice*)
                                                    cnicholas@nicholaslaw.org
                                                    Alex Tomasevic (*pro hac vice*)
                                                    atomasevic@nicholaslaw.org
                                                    225 Broadway, 19th Floor
                                                    San Diego, CA 92101
                                                    Telephone: +1 619 325 0492
                                                    Fax: +1 619 325 0496

                                                    Richard A. Smith
                                                    Texas Bar No. 24027990
                                                    richard@rsmithpc.com
                                                    **PALMER LEHMAN SANDBERG PLC**
                                                    Campbell Centre I
                                                    8350 N. Central Expressway, Suite 1111
                                                    Dallas, TX 75206
                                                    Telephone: + 1 214 2426484

                                                    **ATTORNEYS     FOR     PLAINTIFFS
                                                    FRANCINE MCCUMBER, ET AL.**

25

## CERTIFICATE OF CONFERENCE

As required by Local Rule 7.1(b), I certify that I have conferred with counsel for Defendant

Invitation Homes, Inc. about the merits of Plaintiffs' Motion for Preliminary Approval of Class

Action Settlement. Defendant Invitation Homes, Inc. does not oppose Plaintiffs' motion.

Respectfully submitted,
Dated: May 3, 2023                                    **NICHOLAS & TOMASEVIC LLP**

                                                     _/s/ Alex Tomasevic_____
                                                     Alex Tomasevic (_pro hac vice_)
                                                     atomasevic@nicholaslaw.org

                                                     **ATTORNEYS FOR PLAINTIFFS
                                                     FRANCINE MCCUMBER, ET AL.**

**CERTIFICATE OF SERVICE**

On May 3, 2023, electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the Court's electronic filing system pursuant to Local Rule 5.1(d). I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

**NICHOLAS & TOMASEVIC LLP**

*/s/ Alex Tomasevic*
Alex Tomasevic (*pro hac vice*)
atomasevic@nicholaslaw.org

**ATTORNEYS FOR PLAINTIFFS FRANCINE MCCUMBER, ET AL.**

27